708 P.2d 884

**Stella ALL, Plaintiff-Appellant,**

v.

**SMITH'S MANAGEMENT CORPORATION and Smith's Food King # 1, Inc., a Utah corporation, and Shelby's Park Center, Inc., an Idaho corporation, Defendants-Respondents.**

**No. 15723.**

Supreme Court of Idaho.

Sept. 24, 1985.

Rehearing Withdrawn Nov. 21, 1985.

Lloyd J. Walker, Twin Falls, for plaintiff-appellant.

Michael G. Brady, Boise, and Thomas B. High, of Benoit, Alexander & Sinclair, Twin Falls, for defendants-respondents.

DONALDSON, Chief Justice.

This is an appeal from a directed verdict granted in favor of respondents, Smith's Management Corporation and Smith's Food King # 1 (Smith's) and Shelby's Park Center (Shelby's) at the close of appellant, Stella All's case in chief.

Our standard of review is well established. A party who moves for a directed verdict pursuant to I.R.C.P. 50(a) necessarily admits the truth of the adverse evidence and every inference that may legitimately be drawn therefrom in the light most favorable to the opposing party. *Stephens v. Stearns*, 106 Idaho 249, 252–53, 678 P.2d 41, 44–45 (1984); *Owen v. Burcham*, 100 Idaho 441, 447. 599 P.2d 1012, 1018 (1979). Such a motion made at the conclusion of plaintiff's case-in-chief should not be granted if there is substantial evidence to justify submitting the case to the jury. *Stephens, supra; Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974). The "substantial evidence" test does not require the evidence be uncontradicted. It requires only that the evidence be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. *Stephens, supra; Owen, supra; Mann, supra.*

When viewed in the light most favorable to the appellant the facts of the case are as follows:

During the winter of 1981–1982 and the spring of 1982, the parking lot of Smith's store in Buhl began to deteriorate. Shelby was the owner of the parking lot and pursuant to a lease agreement with Smith's, Shelby was responsible for maintaining the parking lot. Testimony at trial indicates that beginning in December of 1981, Shelby was aware of the deteriorating condition of the parking lot and took various temporary measures to repair it. Shelby contracted to have the parking lot repaved. However, due to wet soil underneath the pavement and the number of prior jobs the contractor had, the lot was not repaved until August of 1982. In the meantime, Shelby contin-

ued to temporarily fill the potholes in the lot with gravel.

On May 19, 1982, the plaintiff-appellant, Stella All, was shopping at the Buhl store. She testified at trial that she left the store via the north exit carrying a bag of groceries in one arm and a potted plant in the other. On the way to her car, she stepped into a hole in the pavement, which was approximately 12 to 14 inches wide and 3 inches deep. Mrs. All fell to her knees and skinned them, and also injured her left ankle and right wrist.

After the fall, Mrs. All went back into the store and reported the accident to the assistant manager. The report shows that in response to the question, "How could the accident have been prevented?" the assistant manager wrote "Holes filled by Shelby." The assistant manager testified, however, that he did not check or attempt to determine where Mrs. All had fallen. He also testified that he was aware of holes in the parking lot near the south entrance but was unaware of any near the north entrance.

Hilda Wright, Mrs. All's daughter, testified that a few days after the fall she went to Smith's and observed potholes in the entire parking lot, including near the north entrance of the building. She did not know, however, which hole her mother fell into.

Mrs. All filed suit against Smith's and Shelby's on May 19, 1983, and trial commenced on August 14, 1984. After Mrs. All presented her case, Smith's and Shelby's moved for a directed verdict. The district court granted the motion.

In granting the motion, the trial court noted that based on the evidence presented by Mrs. All, and viewed in a light most favorable to her case, "It could, thus, be determined that Shelby's was negligent for failure to take adequate steps to keep the holes filled in." The court then stated, "There is insufficient evidence, however, to find any proximate cause between this negligence and the accident," since Mrs. All did not show Shelby's or Smith's knew of the existence of the specific pothole into which

she fell, or how long the pothole was in existence prior to the accident.

Citing *Tommerup v. Albertson's,* 101 Idaho 1, 607 P.2d 1055 (1980), the trial court held that Mrs. All was required to show that the defendants knew, or by the exercise of reasonable care should have known, of the "dangerous condition" which allegedly caused her injury. Based on *Tommerup, supra,* the trial court then found that "the 'dangerous condition' causing the accident was the existence of the specific pot hole involved, not the existence of other holes or the negligent repair thereof."

■ The issue on appeal, therefore, is whether the trial court erred in requiring Mrs. All to show in her prima facie case that Smith's and Shelby's had actual or constructive knowledge of the specific pothole into which she fell. We hold that the trial court's ruling was incorrect and therefore reverse and remand this case for further proceedings consistent with this opinion.

Smith's and Shelby's argue that in order for them to be held liable as owners and possessors of the parking lot, Mrs. All must show they had actual or constructive knowledge of the specific pothole into which she fell. Since Mrs. All presented no evidence as to how long the pothole existed or how long it would take for such a hole to form, Smith's and Shelby's argue that Mrs. All presented no evidence upon which a jury could find actual or constructive notice of the specific pothole. Smith's and Shelby's also cite *Tommerup, supra,* in support of their argument. However, we disagree with their narrow interpretation of that case.

■ In *Tommerup,* we noted the general rule of liability for owners and possessors of land for injuries sustained by invitees.

"The law is well settled in this state that, to hold an owner or possessor of land liable for injuries to an invitee caused by a dangerous condition existing on the land, it must be shown that the owner or occupier knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition." *Tommerup, supra* at 3, 607 P.2d at 1057; *see also, McCasland v. Floribec, Inc.,* 106 Idaho 841, 842, 683 P.2d 877, 878 (1984).

The Wyoming and Colorado courts recently noted that

"The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary.... In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves. Then, actual or constructive notice of the specific condition need not be proved." *Buttrey Food Stores Division v. Coulson,* 620 P.2d 549, 552–53 (Wyo.1980); *Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 494 P.2d 839, 840 (1972); *Mahoney v. J.C. Penney Co.,* 71 N.M. 244, 377 P.2d 663, 673 (1962).

At this point, then, what needs to be proved is the proprietor's actual or constructive knowledge of his own operating methods relating to the continuous or foreseeable dangerous condition.

■ In *Tommerup,* the dangerous condition was a cupcake wrapper which had been discarded near the parking lot. The record was devoid of evidence indicating the condition was anything but an isolated incident. In *Tommerup,* and most recently in *McDonald,* 109 Idaho 305, 707 P.2d 416 (1985), we distinguished the nonrecurring or isolated incident situation—where actual or constructive notice of the specific condition must be shown—from circumstances where the plaintiff shows that the operating methods of the landowner or possessor are such that dangerous conditions are continuous or easily foreseeable. *Tommerup, supra* at 3–4, 607 P.2d at 1057–1058.

In the instant case, Mrs. All presented sufficient evidence to establish that the dangerous condition of the parking lot was a continuous and foreseeable consequence of Shelby's and Smith's operating methods. The formation of the specific hole into which Mrs. All fell was not an isolated incident. Therefore, it was unnecessary for Mrs. All to show that Shelby's and Smith's had actual or constructive knowledge of the *specific* pothole involved. It was enough to show that they were aware of the continuous formation of potholes in the parking lot through the winter and spring of 1982.

The facts in the instant case bear greater similarity to those in *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194, than they do to the facts in *Tommerup.* In *Mann*, the plaintiff established that the floor in the store where she slipped and fell had not been waxed for two or three weeks and a chemically treated mop was used to pick up dust in the meantime. In *Mann*, we did not require the plaintiff to establish that the defendant had actual or constructive knowledge of the specific spot where she fell. We noted that evidence of the slip and fall alone could not support an inference of negligence, but taken together with the evidence of the general condition of the floor over several weeks, the evidence was sufficient to support a jury verdict. *Mann, supra* at 738, 518 P.2d at 1200.

Mrs. All's evidence established that there were potholes in the area of the north entrance, that Shelby's and Smith's were aware of the pothole problem generally, that they were patching them up on a temporary basis, and that they had plans to repave the entire lot. We conclude that the evidence presented, viewed in the light most favorable to Mrs. All, was sufficient to justify submitting the case to the jury. We therefore reverse the ruling of the trial court and remand for further proceedings consistent with this opinion.

The trial court also considered a motion for a directed verdict based on the lease agreement between Smith's and Shelby's in which the latter was given sole responsibility for maintenance of the parking lot. There was considerable discussion of the merits of this motion before the trial court. The trial court, however, declined to rule on this motion in light of its granting the directed verdict in favor of both Smith's and Shelby's on the grounds discussed above. Since there was no ruling on this motion below, we decline appellant's invitation to determine what should be the appropriate ruling on remand.

Costs to appellants.

No attorney fees on appeal.

SHEPARD, BAKES, BISTLINE and HUNTLEY, JJ., concur.