BEVAN, Justice.
This is an appeal from a grant of summary judgment dismissing an action originally *446 brought by Diane Brooks ("Brooks") against Wal-Mart Stores, Inc., ("Wal-Mart") based on injuries Brooks received when she slipped and fell on a puddle of water near a Rug Doctor self-service kiosk (the "kiosk") inside the Wal-Mart on Overland Road in Boise, Idaho. Brooks based her claims on premises liability and negligent mode of operation, alleging Wal-Mart knew or should have known that water could spill or leak onto the floor near the kiosk. Wal-Mart moved for summary judgment, arguing that Brooks failed to establish Wal-Mart had actual or constructive notice of the condition that caused her injury. The district court agreed. Because we find material issues of fact exist, we reverse the district court's decision.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. The rental process at Wal-Mart .
In August 2011[1] , Wal-Mart and Rug Doctor entered into a Vendor Agreement which allowed Rug Doctor to place its carpet cleaning machines into Wal-Mart stores and offer them for rent to Wal-Mart customers. Through the Vendor Agreement, Wal-Mart directed that the machines be offered to customers through an automated self-serve rental process which required no involvement from Wal-Mart's employees. The Agreement purported, among other things, to place all responsibility for a machine's safety upon Rug Doctor. Wal-Mart's involvement in the process was merely that of providing a location for the Rug Doctor machines to be rented, while taking a fee for that service. Wal-Mart took no other direct action in the rental/return process of its customers renting Rug Doctor machines. Thus, the procedure was entirely self-serve and unsupervised. In addition, no Wal-Mart employee had a responsibility to interact with either Rug Doctor's account manager, Spencer Hinkle ("Hinkle"), during his visits to the Wal-Mart store to inspect Rug Doctor's equipment. That necessarily meant that no employee would be responsible to inspect the Rug Doctor machines to determine if they were clean or dirty upon a rental return. Wal-Mart had no personal knowledge of the process for renting a Rug Doctor machine, no Wal-Mart employee was responsible to determine if a Rug Doctor machine still had liquid in it when rented, or returned, and no Wal-Mart employee was responsible to inspect the Rug Doctor machines to determine if they leaked.
The machines were serviced approximately every two weeks by Hinkle. Hinkle testified that he serviced sixty-eight total accounts in the Treasure Valley, nine of which were Wal-Mart stores. The self-service mode of operation was utilized only at Wal-Mart; in all other locations a store employee was involved in the rent-and-return process.
Rug Doctor split the rental and cleaning product fees with Wal-Mart. In the typical arrangement with other stores, Hinkle would provide training to store employees who were involved in the rental and return process. Hinkle testified that he provided no training to the Overland Wal-Mart personnel, nor was he ever asked by anyone at that location to provide training.
B. Wal-Mart's slip-and-fall policy.
Wal-Mart adopted a slip-and-fall policy entitled "Slip, Trip and Fall Guidelines," which was in place at the time Brooks fell. This policy required employees to keep an eye out for potential hazards in the areas they worked. Specifically, Wal-Mart's maintenance associates were tasked with the responsibility of performing "safety sweeps" of high traffic areas and cleaning up spills throughout the day. All other Wal-Mart associates were tasked with performing visual "safety-sweeps"
*447 as they performed their regular job duties in the areas that they were assigned. Thus, Wal-Mart operated on a clean-as-you-go method with employees directed to observe and remove spills or other safety issues. Nevertheless, Wal-Mart did not keep records to document the work done by its maintenance associates, nor did its employees document any spills that they may have seen, or that they may have cleaned up. As a result, there was no documentation as to whether or where routine sweeps were actually done, nor was there any evidence showing whether spills were routinely located and cleaned. Wal-Mart maintained through the testimony of its employees that a spill had never occurred in front of or near the Rug Doctor kiosk prior to Brooks' fall.
C. The accident .
On July 24, 2013, Brooks went to Wal-Mart on Overland Road in Boise, Idaho to buy bags of wood chips for her yard. Brooks entered the store through the main doors on the east end of the store and asked a cashier for assistance. A cashier directed Brooks to Customer Service. Brooks proceeded down the action alley-a high traffic area/aisle which runs perpendicular to the cash registers and connects the store's front two entrances-to Customer Service. A Wal-Mart employee then escorted Brooks back through the Action Alley towards the garden center. While walking down the action alley, Brooks' left foot started to slide, she slipped, and ultimately fell in the area of the self-serve Rug Doctor and Primo Water kiosks. As a result of her fall, Brooks suffered an injury to her left knee that required surgery.
Prior to her fall, Brooks did not see any liquid on the floor. After her fall, Brooks saw the liquid and was lying in it while Wal-Mart employees were assisting her. Neither Brooks nor Wal-Mart employees could find the direct source of the liquid; however, in a subsequent investigation, Wal-Mart documented that Brooks slipped on a puddle of water that had apparently originated from the Rug Doctor kiosk.
Brooks' fall was captured on video. The surveillance video shows that approximately seven minutes before Brooks' fall, a Wal-Mart customer had rented a Rug Doctor machine and lifted it into a shopping cart. The video does not show liquid coming directly from the machine; however, that can be related to the quality of the video and glare on the flooring. The video does show the customer and another person tilting the machine back-and-forth while lifting it into a shopping cart near the precise location where Brooks fell. The video also shows that a Wal-Mart employee and several customers travelled within the same area or path that Brooks travelled within the seven minutes time interval between when the Rug Doctor machine was rented and Brooks' fall. During this interval no customers reported any spills and no employees noticed the hazard.
D. Procedural background.
Brooks filed a complaint on November 19, 2014 alleging claims of negligence against Wal-Mart for failure to maintain the premises and to adequately warn Brooks of the dangerous condition that caused her injury. In an amended complaint filed on July 7, 2015, Brooks included a claim of negligent mode of operation against Wal-Mart, Rug Doctor, Inc., and Rug Doctor, LLC.
On March 2, 2016, Wal-Mart filed a motion for summary judgment seeking dismissal of Brooks' claims, arguing her allegations were based on speculation rather than objective evidence. Rug Doctor filed a similar motion on the same date. On April 11, 2016, the district court granted summary judgment in favor of Wal-Mart, but denied the same relief to Rug Doctor. The court determined that Rug Doctor machines could leak or spill liquid onto the floor of the Wal-Mart store which would create a potentially dangerous condition, finding that issues of fact remained as to whether it was foreseeable that a Rug Doctor machine could cause an injury, and whether Rug Doctor exercised reasonable care to avoid Brooks' injury. The court also found that there were triable issues of fact as to whether it was reasonably foreseeable to Rug Doctor that the machine would or could leak or spill liquid during the self-serve rental process. The court, however, refused to apply these findings to Wal-Mart.
*448 The court found Brooks failed to offer evidence that established Wal-Mart had actual or constructive notice of the dangerous condition and that the liquid on the floor near the kiosk was not a continuous or foreseeable hazard. Brooks timely filed a motion for reconsideration on April 25, 2016, arguing that because the district court found reasonable minds could differ whether or not Rug Doctor's self-serve rental process could create a hazardous condition in her claim against Rug Doctor, then Wal-Mart, too, could be held liable for choosing the operating method and introducing the potentially hazardous rental process into its store. In its order denying the motion for reconsideration, the district court determined: (1) that Brooks failed to present evidence that Wal-Mart was a direct and immediate cause of Brooks' injury; (2) that Wal-Mart did not breach its general duty of care; and (3) that Wal-Mart's decision to use the self-service model was not what caused the liquid to be on the floor. The district court dismissed Brooks' claims against Wal-Mart with prejudice on October 17, 2016. Brooks timely filed a notice of appeal.
II. STANDARD OF REVIEW
A. Summary judgment.
In a motion for summary judgment, the moving party bears the burden of proving the absence of a material fact. Sadid v. Idaho State University , 151 Idaho 932, 938, 265 P.3d 1144, 1150 (2011). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S. , 159 Idaho 679, 685, 365 P.3d 1033, 1040 (2016). If the moving party has satisfied its burden, the non-moving party must then come forward with sufficient admissible evidence identifying specific facts that demonstrate the existence of a genuine issue for trial. Wattenbarger v. A.G. Edwards & Sons, Inc. , 150 Idaho 308, 317, 246 P.3d 961, 970 (2010). Such evidence may consist of affidavits or depositions, as well as other material based upon personal knowledge which would have been admissible at trial. Sherer v. Pocatello School District No. 25 , 143 Idaho 486, 489, 148 P.3d 1232, 1236 (2006). "Circumstantial evidence can create a genuine issue of material fact ... [and] [i]nferences that can reasonably be made from the record are made in favor of the non-moving party." ParkWest Homes, LLC v. Barnson , 154 Idaho 678, 682, 302 P.3d 18, 22 (2013) (citation omitted).
"If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." Lockheed Martin Corp. v. Idaho State Tax Comm ., 142 Idaho 790, 793, 134 P.3d 641, 644 (2006) (citation omitted).
B. Motions to reconsider.
"[W]hen the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment. This means the Court reviews the district court's denial of a motion for reconsideration de novo." Shea v. Kevic Corp. , 156 Idaho 540, 545, 328 P.3d 520, 525 (2014) (internal quotations and citation omitted).
III. ANALYSIS
A. Introduction.
A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." Griffith v. JumpTime Meridian, LLC , 161 Idaho 913, 915, 393 P.3d 573, 575 (2017) (internal quotations and citation omitted). In general, "[e]very person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury." Stephens v. Stearns , 106 Idaho 249, 256, 678 P.2d 41, 48 (1984) (internal quotations and citations omitted). Generally, "[w]hether a duty exists is a question of law over which this Court exercises free review." Cumis Ins. Soc'y, Inc. v. Massey , 155 Idaho 942, 948, 318 P.3d 932, 938 (2014).
*449 When a negligence cause of action is based on premises liability, the element of duty depends on the status of the injured person in relation to the landowner, i.e., invitee, licensee (social guest), or trespasser. Shea , 156 Idaho at 548, 328 P.3d at 528 (citing Peterson v. Romine , 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998) ). An invitee is defined as one who enters the premises of another with the owner's express or implied consent for the mutual benefit of the entrant and the owner, or for a purpose connected with the business in which the owner is engaged. Holzheimer v. Johannesen , 125 Idaho 397, 400, 871 P.2d 814, 817 (1994).
Wal-Mart concedes that Brooks had the status of an invitee on the Wal-Mart premises. Landowners are charged with a superior knowledge of their premises and the possible dangers located there, as compared with their invitees. Antim v. Fred Meyer Stores, Inc. , 150 Idaho 774, 778, 251 P.3d 602, 606 (Ct. App. 2011). Traditionally, there are two kinds of duties a landowner owes to an invitee: "to keep the premises reasonably safe, and to warn of any concealed dangers which the landowner knows of or should have known of upon reasonable investigation. ..." Stem v. Prouty , 152 Idaho 590, 594, 272 P.3d 562, 566 (2012) (emphasis added) (citation omitted). Typically a landowner's duty to keep the premises reasonably safe and to warn of hazards arises only when the landowner or occupier "knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition." All v. Smith's Management Corp. , 109 Idaho 479, 481, 708 P.2d 884, 886 (1985) (citing Tommerup v. Albertson's, Inc ., 101 Idaho 1, 607 P.2d 1055 (1980) ).
B. The district court erred in granting summary judgment where triable questions of fact exist.
1. A genuine issue of material fact exists whether or not Wal-Mart should have known of the existence of a dangerous condition by choosing a self-service operating method which required no employee involvement by Wal-Mart.
The district court found, both at summary judgment and when denying Brooks' motion for reconsideration, that Brooks had failed to establish that Wal-Mart should have known that the Rug Doctor kiosk created a dangerous condition. We disagree.
The district court analyzed the issue much like the district court in All v. Smith's Management Corp. , supra , where the court granted a directed verdict because the plaintiff failed to prove that the defendants "knew of the existence of the specific pothole into which she fell, or how long the pothole was in existence prior to the accident." 109 Idaho at 480-81, 708 P.2d at 885-86. This Court reversed the district court's determination, holding that to establish a prima facie case against the owners and possessors of a parking lot the plaintiff was only required to establish that the owners or possessors had actual or constructive notice of a foreseeable dangerous condition.
Similarly, the district court in this case found:
[T]here is no evidence that there was frequently or commonly water or other liquids on the floor near the Rug Doctor kiosk. Therefore, the dangerous condition which allegedly caused Plaintiff's injuries is an isolated incident.
... Plaintiff argues that Wal-Mart failed to acquire any knowledge with regard to potential hazards the Rug Doctor machines could cause. The Court does not find that this failure, taking all inferences in Plaintiff's favor, creates constructive knowledge of this hazardous condition. Because the Court is addressing an isolated event, Wal-Mart's constructive knowledge should match the event, not all possible events. Therefore, the fact that Wal-Mart did not make itself aware that Rug Doctor machines could leak does not impute to Wal-Mart the knowledge of the puddle in which plaintiff slipped.
By focusing on Wal-Mart's lack of actual notice in this case, the court overlooked Wal-Mart's possible negligent conduct in its alleged purposefully failing to even inquire, in *450 any way, regarding the Rug Doctor machines' potential to leak or otherwise create an unreasonable risk of harm to Wal-Mart's customers. Wal-Mart, as the store owner, necessarily controlled what products and/or services were made available to its customers within its store. Whether Wal-Mart failed to exercise due care to familiarize itself of these risks in its chosen, self-service operation is a triable question of fact that the jury must resolve.
This Court previously made this point in Tommerup , wherein we stated:
"The owner is not an insurer of such (invitees) .... Nor is there any presumption of negligence on the part of an owner or occupier merely upon the showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. ( Mautino v. Sutter Hospital Association , 211 Cal. 556, 296 P. 76 (1931) )." Martin v. Brown , 56 Idaho [379] at 382, 54 P.2d [1157] at 1158 [ (1936) ]....
Because the true ground of liability is the superior knowledge of the owner or possessor, we fail to see any justification for holding him liable for injury caused by defects about which he had no knowledge, when the lack of knowledge was not due to a failure by the owner or possessor to use ordinary care .
101 Idaho at 3-4, 607 P.2d at 1057-58 (emphasis added).
Thus, as a matter of law, Wal-Mart possesses "superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon [its] property." Id . This superior knowledge also mandates that Wal-Mart exercise due care to have knowledge of potentially dangerous instrumentalities located on its business premises. "To establish a prima facie negligence case, the invitee also must show that the landowner knew, or in the exercise of reasonable care should have known, of the alleged dangerous condition." Shea , 156 Idaho at 548, 328 P.3d at 528. Whether a potential risk is isolated or not, the landowner may be found liable for adopting a method of operation (the self-service method here) and failing to take proper precautions to educate itself as to the potential hazards of such a method, and/or by failing to take a more-active role to insure customer safety with products coming and going from the store which may contain water, and thus present hazards to those, like Brooks, who was injured in close proximity to the Rug Doctor kiosk.
Wal-Mart and Rug Doctor created an agreement which allowed Wal-Mart to profit from the rental of Rug Doctor machines on its premises. At the same time, Wal-Mart is alleged to not have availed itself of any opportunity to gain any knowledge about the potential for the Rug Doctor machines to pose a hazard, through leaking water or other substances, to Wal-Mart's customers who traversed the busiest part of the store-the Action Alley.
On these facts the district court denied summary judgment for Rug Doctor, finding that:
[w]hile there are many potential sources of the liquid on which Plaintiff slipped, the Court must take the inferences in Plaintiff's favor. ... This confluence of location, timing and the admission of leaking machines create a circumstantial piece of evidence the Court simply can't disregard or weigh as a scintilla or less. The jury could view the video, hear testimony of the kiosk manager, and consider evidence as to whether the Rug Doctor machine could have leaked at that location and conclude Rug Doctor LLC caused the puddle in which Plaintiff slipped.
Such facts apply similarly to Wal-Mart's claimed failure to educate itself as to foreseeable risks due to its own chosen operating method. "At this point ... what needs to be proved is [Wal-Mart's] actual or constructive knowledge of its own operating methods relating to the ... foreseeable dangerous condition." All , 109 Idaho at 481, 708 P.2d at 886 (emphasis added). Whether Wal-Mart failed to exercise due care when it adopted an automated self-serve operating method for the Rug Doctor machines is a triable question of fact that precluded summary judgment *451 in this case. As such, a jury may have properly considered the following evidence, which is, for our purposes, construed in Brooks' favor:
• Wal-Mart stores were the only locations where a self-service operating method was utilized in Hinkle's territory as a Rug Doctor account manager. Fifty-nine other accounts utilized employees to check-in and check-out such machines;
• The machines could leak from their nozzles, from their bottom, or from their hoses due to normal wear and tear;
• The machines could be returned with water remaining in them, which could spill when the machines were lifted, tilted and placed into a shopping cart;
• The rental process for Rug Doctor machines at Wal-Mart was self-serve and unsupervised. Thus, no Wal-Mart employee inspected the machines upon return to determine if they were clean or dirty;
• No Wal-Mart employee was responsible to determine if a Rug Doctor machine still had liquid in it when returned;
• The Rug Doctor account manager never provided any training to the Overland Wal-Mart personnel, nor was he ever asked by anyone at that location to provide training;
• Wal-Mart failed to document when or if floor sweeps occurred. While employees were trained to be constantly on alert for spills or other hazards, Wal-Mart did not document when or where spills occur, or why.
This case presents the unique circumstance where the business owner placed a potentially dangerous product that could leak or spill fluid in the busiest part of its store, and then left its customers to their own devices in managing that product. We recognize that Wal-Mart had its own safety policies and procedures in place to allegedly minimize danger to its customers; however, this blanket safeguard may or may not be enough, given the self-service mode of operation involved here, to shield Wal-Mart from its potential negligence for adopting and executing this operating method. These circumstances present issues of fact for the jury, who will be tasked to judge the credibility of all witnesses, including Wal-Mart's employees, regarding whether it exercised due care in adopting the self-serve operating method, and by its alleged adherence to its own policies. Given the facts, as alleged by Brooks, a reasonable jury could reach the conclusion that Wal-Mart should have known its operating method for managing Rug Doctor machines created a dangerous condition.
Wal-Mart argues, and the district court agreed, that this situation presented an isolated incident for which Wal-Mart had no actual or constructive notice as a matter of law. We will not go so far. Whether the incident was isolated or not, Brooks' burden to establish constructive notice is mired in facts that preclude summary judgment against her. "[C]onstructive knowledge is that knowledge which reasonable diligence would have disclosed. ..." State v. Carlson , 50 Idaho 634, 637, 298 P. 936, 937 (1931). Wal-Mart's negligence need not be tied to whether the event in this case was isolated. Rather, its negligence may be premised in its adoption and execution of the self-service operating method. An additional question of fact is whether Wal-Mart created a dangerous condition when it placed potentially risky machines on its premises and then failed to act reasonably in managing those machines. A reasonable jury may find that Wal-Mart's actions were not negligent, but it may find that they were. Therefore, the district court's grant of summary judgment is vacated.
2. Issues of fact also preclude summary judgment based on Wal-Mart's constructive notice of the hazardous condition in this case.
Brooks also argues that material issues of fact existed to preclude summary judgment as to Wal-Mart's constructive notice of the spill itself. We agree.
In addition to issues of fact regarding Wal-Mart's adoption and execution of the self-service operating method, Brooks has established a genuine issue of material fact that Wal-Mart had constructive notice of the liquid in front of the Rug Doctor kiosk at the time Brooks fell. Brooks has shown that Wal-Mart *452 associates could have seen the liquid based on their training and clean-as-you-go maintenance policy.
First, video surveillance shows a Wal-Mart employee walking by the area approximately five and a half minutes before Brooks fell. Wal-Mart's floor safety policy required Wal-Mart employees to be constantly on alert looking for hazards, and to remove any discovered hazards quickly. Based on Wal-Mart policy, because an employee walked down the Action Alley opposite of the Rug Doctor kiosk the employee could have discovered the liquid as part of a routine visual sweep of the area. Viewing this reasonable inference in a light most favorable to Brooks, a reasonable jury could find that this Wal-Mart employee, exercising reasonable care, should have discovered the hazard.
Second, the record reflects that the Wal-Mart associate escorting Brooks to the garden center failed to see the liquid and failed to warn her. Brooks testified as follows:
Q. Did the Walmart [sic] associate that was walking with you ever make a comment about, "Be careful, there's a puddle of water in front of you?"
A. Not a word.
Because Brooks testified she was looking up and around and not at the floor when she fell, Wal-Mart contends that Brooks should have been watching where she was walking to avoid injury. While this is certainly a good argument for the jury, such a claim carries little weight at the summary judgment stage. See Van Brunt v. Stoddard , 136 Idaho 681, 690, 39 P.3d 621, 630 (2001) ("Generally, a plaintiff's conduct affecting his comparative responsibility is a question for the jury.").
For Wal-Mart to argue that Brooks should have seen the liquid is to disregard the statement of its own employee who was escorting Brooks. The associate, presumably trained to spot hazards, failed to notice the liquid on the floor despite the testimony of the store manager that every Wal-Mart employee was trained to watch for safety issues. The associate stated "I was walking with [Brooks] over to the garden center to help her with a purchase of bark, on our way to garden the customer fell down near the rug doctor. I saw water on the floor." It follows that if Brooks should have seen the liquid, then the associate, who was not only more familiar with the store, but also had a higher duty to maintain the premises in a safe condition, should have seen the liquid prior to Brooks' fall. The presence of two employees in the area creates a legitimate question of fact concerning Wal-Mart's failure to notice the hazard.
Third, as noted above, Hinkle, Wal-Mart's Rug Doctor account manager, stated that there are conditions under which the machines may leak. He testified, in his experience, "[water] could leak from the tank, [it] could leak from the bottom." He also agreed that water could leak if "[the machine] is tilted on it's [sic] side or upside down or [the] bottom tank [is] overfilled." Additionally, he described that Rug Doctor machines could foreseeably leak water in the following ways: from a worn nozzle on the bottom of the machine; from the attachment for the upholstery tool; from a worn coupler; from hoses if not correctly attached; or from an incorrectly installed reservoir bucket.
In addition to the evidence that suggests it was foreseeable that Rug Doctor machines may leak, approximately seven minutes before the incident occurred Wal-Mart's surveillance video shows that a customer rented a Rug Doctor machine at or near the exact location where Brooks fell. In the process, the machine had to be tilted back-and-forth so it would fit into a shopping cart. While there are many potential sources of the liquid on which Brooks slipped, we must take the inferences in Brooks' favor and apply the lesser standard of proof required to survive a motion for summary judgment than is required at trial. Liberty Bankers Life Ins. Co. , 159 Idaho at 685, 365 P.3d at 1040.
Under this standard, the location of the fall, the timing, and the evidence that Rug Doctor machines can leak creates a genuine issue of material fact that Wal-Mart had constructive notice of the spill in this case.
3. Brooks failed to raise the adoption of foreign law before the district court; therefore, the Court will not consider the issue in this case.
Brooks' argument that this Court should adopt Washington law and extend a *453 mode of operation approach to premises liability is an argument raised for the first time on appeal.
Brooks argues that this Court should adopt Washington law to modify the traditional rules of premises liability by bringing them in line with the modern techniques of self-service merchandising. In doing so, Brooks maintains that the notice requirement should be eliminated "if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." Pimentel v. Roundup Co. , 100 Wash. 2d 39, 50, 666 P.2d 888, 893 (1983). This argument is unavailing because Brooks did not ask the district court to adopt Washington's exception to the requirement that she prove actual or constructive notice. "[A]ppellate courts will not consider new arguments raised for the first time on appeal." English v. Taylor , 160 Idaho 737, 741, 378 P.3d 1036, 1040 (2016) (internal quotations and citation omitted). Because Brooks did not ask the district court to adopt Washington law she is therefore precluded from asking this Court to do so.
Alternatively, Brooks asks this Court to make new law, holding premises owners responsible for the risks associated with the self-serve operating methods they choose. Brooks asserts that retailers should not be allowed to plead conscious ignorance as a defense when their own operating method leads to an injury on their premises. Insofar as we have discussed Wal-Mart's general duty to exercise ordinary care in being aware of potential risks due to its operating methods, Brooks has prevailed on this point. To the degree that Brooks requests that we make new law and equate the term "easily foreseeable" as a matter of law to allegedly flawed operating methods, we decline to do so. These arguments were likewise not raised below-therefore, we will not consider them for the first time on appeal.
IV. CONCLUSION
We vacate the district court's order granting summary judgment and remand this case for further proceedings consistent with this Opinion. Costs on appeal are awarded to Appellant.
Chief Justice BURDICK and Justices HORTON and BRODY concur.

Our recitation of the facts as stated herein are those gleaned from the Record before this Court. The recitation of facts is couched, as it must be when reviewing a grant of summary judgment, see G & M Farms v. Funk Irrigation Co., 119 Idaho 514, 517, 808 P.2d 851, 854 (1991), in favor of Brooks as the non-moving party. Wal-Mart emphasizes one view of the facts while Brooks emphasizes another. The facts as recited herein include reliance on the bedrock principle that circumstantial evidence can create a genuine issue of material fact. Wandering Trails, LLC v. Big Bite Excavation, Inc. , 156 Idaho 586, 591, 329 P.3d 368, 373 (2014). We are not tasked to determine which facts are more-believable or which facts a jury may find more-persuasive at a future trial in this case.