# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47261

JOHN A. OSWALD, an individual; NANCY R. POORE, an individual,

    Plaintiffs-Appellants,

v.

COSTCO WHOLESALE CORPORATION, a Washington corporation,

    Defendant-Respondent,

and

ESTATE OF FRANK L. MEYERS, and DOES INDIVIDUAL/ENTITIES I through XX,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2020 Term

Opinion Filed: October 5, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Jason D. Scott, District Judge.

The decision of the district court is <u>reversed</u> and <u>remanded</u> for further proceedings.

Andersen, Schwartzman, Woodard, Dempsey, PLLC, Boise, for Appellants. Steven B. Andersen argued.

Eberle, Berlin, Kading, Turnbow, & McKlveen, Chartered, for Respondent. Neil D. McFeeley argued.

---

BURDICK, Chief Justice.

John A. Oswald and Nancy R. Poore ("the Plaintiffs") appeal from an Ada County district court's final judgment entered after the court awarded summary judgment in favor of the defendant, Costco Wholesale Corporation ("Costco"). The lawsuit focuses on the parking lot of Costco's Boise store—specifically, the parking lot's pedestrian walkway that bisects two

1

perpendicular rows of ADA-accessible parking spaces. In February 2017, Oswald and Poore were walking on that walkway when an elderly driver drove onto it, striking Oswald and pinning him against a vehicle parked on the opposite side, causing Oswald to suffer significant injuries. The Plaintiffs sued Costco alleging (1) premises liability, (2) negligence and willful wanton conduct, (3) negligent infliction of emotional distress, and (4) intentional infliction of emotional distress. After the district court resolved a discovery dispute in Costco's favor, Costco moved for summary judgment. In granting the motion, the district court ruled that Costco had no notice that its walkway was a dangerous condition and, therefore, owed no duty to redesign it or warn pedestrians about it. The district court entered judgment dismissing the Plaintiffs' claims with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal comes to this Court from a decision granting summary judgment in favor of Costco, the facts are presented in the light most favorable to the Plaintiffs.

### A. The parking lot and walkway at Costco's Boise Warehouse

Costco's Boise store features a parking lot that wraps around the warehouse from its north side to its west side. The parking lot features concrete walkways for pedestrians traversing the parking lot. The walkways extend from the warehouse to the sidewalks that comprise the perimeter of the property. All the walkways are flanked by perpendicular parking spaces and rubber "wheel stop" embankments that rest a few feet away from the walkways. The wheel stops are a few inches high and covered with bright yellow strips of reflective material.

A central walkway ("the Walkway") is different from the other walkways in a few respects. First, the Walkway sits level with the parking lot's asphalt, while the other walkways are raised above the ground, creating a curb. Second, the parking spaces bisected by the Walkway are ADA-accessible and situated perpendicular to the Walkway. The ADA parking spots are bordered on one side by an "access aisle," demarcated by striped paint, which provides additional space for a person using a wheelchair to enter and exit a parked vehicle. The Walkway also features signposts jutting up from the front-center of the parking spaces right before the asphalt transitions to concrete. At the time of the incident, some of the signs were bent toward the Walkway and some of the wheel stops in the ADA-accessible stalls were not squarely aligned with the Walkway.

2

## B.  The Incident

On the afternoon of February 10, 2017, John Oswald and his significant other, Nancy Poore, had finished shopping at Costco and were returning to their vehicle using the Walkway. Oswald pushed the couple's cart as Poore walked in front of him. Suddenly, Frank Myers—a 92-year-old man who had recently had his license suspended and reinstated for being involved in a prior collision—drove his Cadillac Deville onto the Walkway and into Oswald, pinning him against a GMC Envoy that had just parked on the opposite side of the Walkway ("the Incident").

Myers had been attempting to park his Cadillac in one of the ADA stalls. In the process, it appears that he drove through a portion of the access aisle to the left of the parking spot he was aiming for, striking the right-side rear bumper of an unoccupied Ford Taurus parked on the other side of the access aisle with the left front bumper of his Cadillac. Apparently confused, Myer pressed on the gas, causing him to sideswipe the Taurus and drive over a wheel stop[1] and into the Walkway where he struck Oswald.

Myers' car pushed Oswald into the front end of the GMC Envoy that had just parked in the parking spot situated opposite to the one Myer attempted to park in. Still confused, Myers did not back up his Cadillac to release Oswald, but instead kept pressing on the gas pedal until an onlooker rushed over, reached into the vehicle, put the Cadillac in park, shut off the engine, and removed the keys from the ignition. Luckily, because the driver of the GMC Envoy was still in the vehicle, the Envoy reversed, freeing Oswald. One of the bystanders, an E.R. physician, attended to Oswald until an ambulance arrived. Oswald suffered substantial and severe injuries requiring extended hospitalization and rehabilitation. Poore was not struck by Myers' vehicle nor did she see Myers' Cadillac strike Oswald, but she witnessed the aftermath.

## C.  The Plaintiffs' complaint

On April 24, 2017, Oswald and Poore filed suit against both Myers and Costco. Shortly thereafter, Myers passed away and his estate was substituted for him as a defendant. The estate and the Plaintiffs reached a settlement before the summary judgment ruling in this case. As a consequence, only the claims against Costco are relevant to this appeal.

---

[1] The parties dispute exactly where Myers' car entered the Walkway and how much of his vehicle crossed the wheel stop.

Plaintiffs asserted four claims against Costco: (1) premises liability; (2) negligence and willful wanton conduct; (3) negligent infliction of emotional distress; and (4) intentional infliction of emotional distress.

The Plaintiffs alleged that the Walkway was unsafe because it invited pedestrians to use a pathway unprotected from vehicle incursions while Costco failed to provide the necessary protection against such incursions. Plaintiffs alleged that "Costco knew or should have known that its parking lot design and pedestrian pathway configuration created an unreasonable risk of harm to those walking upon the subject pathway between the rows of ADA parking stalls." In detailing their cause of action for premises liability, the Plaintiffs asserted that the Walkway was a dangerous condition that Costco had a duty to warn its invitees of because there was "a high degree of probability that such harm would actually result." For their cause of action for negligence, Plaintiffs asserted that Costco violated its duty of care by failing to "protect Plaintiffs against the reasonably foreseeable, harmful, and tortious conduct of third parties."

**D. The discovery dispute**

Following an initial exchange of discovery, Plaintiffs served a second set of discovery requests on Costco (the Second Set of Discovery). Believing the Second Set of Discovery to be overly broad and burdensome, Costco sought a protective order. After a hearing, the district court granted Costco's motion in its entirety, ruling that Costco was under no obligation to respond to the Second Set of Discovery. The district court noted that, as drafted, the Second Set of Discovery "call[ed] for Costco to disclose on a nationwide basis any incident in which it is aware of a vehicle impacting anything."

Immediately after ruling from the bench, the district court offered comments and its "general thoughts" on what it would likely permit when the Plaintiffs went back to the drawing board. Afterward, Plaintiffs submitted a "revised" second set of discovery (Revised Second Set of Discovery). Costco again responded with a motion for a protective order for many of the same reasons. The Court never ruled on the second motion, because the parties reached an agreement narrowing the issues.

**E. Motion for summary judgment and motions to strike**

On March 8, 2019, Costco moved for summary judgment on all claims against it, arguing that Plaintiffs could not "establish the breach and causation elements of their negligence claim." Plaintiffs responded with a memorandum in opposition and submitted a declaration from their

4

experts, Robert Reiter and Adam Aleksander, each incorporating their reports, rebuttals, and curriculum vitae in support. Plaintiffs' attorney, Christine Arnold, submitted an affidavit attaching 22 exhibits. Among those exhibits were various news articles detailing vehicle-on-pedestrian accidents that took place in Costco parking lots around the country.

On the same day Plaintiffs filed their response to Costco's motion for summary judgment, Costco filed a motion to strike Reiter's and Aleksander's expert reports along with the rebuttal expert reports, and to prohibit those experts from testifying. Costco also moved to strike certain documents submitted in support of Plaintiffs' opposition to summary judgment and filed a reply brief urging the district court to disregard any evidence of accidents at locations other than the Boise Costco.

After a hearing and taking the matter under advisement, the district court granted summary judgment in favor of Costco, ruling that Costco did not have a legal duty because the type of harm that occurred here was not foreseeable under either the "isolated or nonrecurring test" or the "continuing or recurring test" for premises liability. This conclusion led the district court to dismiss all remaining counts against Costco.

In its memorandum decision, the district court also granted Costco's motion to strike "to the extent Reiter and Aleksander opine that the accident was foreseeable or that the walkway's design was unacceptably risky." It reasoned that such opinions were either legal conclusions or concerned conclusions the average juror would be able to deduce without the aid of an expert. The court then struck some of Plaintiffs' exhibits on the grounds of relevancy.

In awarding summary judgment to Costco, the district court determined that Plaintiffs could not establish that Costco owed them a duty under the "continuing or recurring" test for imposing liability on land possessors based on dangerous conditions. *See Johnson v. Wal-Mart Stores, Inc.*, 164 Idaho 53, 57, 423 P.3d 1005, 1009 (2018). Specifically, the district court determined the Plaintiffs failed to show that "the landowner's operating methods 'are such that dangerous conditions are continuous or easily foreseeable,'" i.e., that Plaintiffs could not show that Costco "knew or should have known [its] operating methods caused or were likely to cause a dangerous condition." *Id.* (quoting *Shea v. Kevic Corp.*, 156 Idaho 540, 548–49, 328 P.3d 520, 528–29 (2014)). Acknowledging that foreseeability of the danger of a condition was a "flexible concept" that varied based on the degree of harm versus the relative ease of preventing it, the

5

district court described the question of foreseeability as "whether reasonably prudent people would take the risk of it into account in determining how to conduct themselves."

To reach its conclusion, the district court cited twenty-six cases from other jurisdictions for the proposition that injuries caused by out-of-control vehicles in parking lots were unforeseeable "as a matter of law." This, it reasoned, reflected that the out-of-control nature of such incidents rendered them so improbable that a reasonably prudent person would not take them into account. The court's analysis also emphasized the public-policy implications of its decision. For instance, the court hypothesized about a type of unlimited liability for land possessors if such an injury was deemed foreseeable, wondering what would be required of Costco to prevent such injuries, noting that only an "impregnable barrier would suffice," and further speculated that motorcycles could pass in-between bollards[2] and a truck could crash through a cement wall. Based on this reasoning, the court adopted what it characterized as "the majority rule that a parking-lot owner owes no general duty to install barrier[s] that protect people in its parking lots from out-of-control drivers."

The district court ultimately determined that summary judgment was appropriate, concluding:

> Myers's pedal error and his vehicle's resulting incursion onto the walkway wasn't reasonably foreseeable. Costco lacked actual or constructive notice that the walkway is a dangerous condition. Costco therefore owed no duty, under the "continuing and recurring" test, to redesign its walkway or to warn pedestrians that using it isn't safe.

The district court also awarded summary judgment on the Plaintiffs' other counts, reasoning that they "articulate no basis for a finding of negligence on this claim that differs from their argument for such a finding on their premises liability claim." It reasoned that for this claim to be distinguished from premises liability would require "a wrong different from merely having a dangerous condition on one's property" such as "engaging in some sort of negligent act or omission." The Plaintiffs timely appealed.

## II. STANDARD OF REVIEW

> This Court reviews a grant of summary judgment under the same standard of review the district court originally applied in its ruling. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "When considering whether the evidence in the record shows that there is no genuine

---

[2] A bollard is a short, vertical post used for traffic control.

issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." The moving party has the burden of establishing there is no genuine issue of material fact.

"If the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment." The nonmoving party must present evidence contradicting that submitted by the movant, and which demonstrates a question of material fact. However, "[a] mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment."

*Johnson v. Wal-Mart Stores, Inc.*, 164 Idaho 53, 56, 423 P.3d 1005, 1008 (2018) (internal citations omitted).

## III.   ANALYSIS

This appeal asks whether a possessor of land can be held liable in negligence if the design of its parking lot failed to take into consideration the foreseeable negligence of a third party. It also focuses on how a court should address the issue of foreseeability on summary judgment when a plaintiff alleges negligence under a premises liability theory.

In general terms, Plaintiffs allege that Costco violated the duty of reasonable care owed to invitees to make their premises safe and to protect invitees from reasonably foreseeable risks of harm. This claim encompassed two overlapping theories of liability. First, Plaintiffs claimed that the Walkway was a dangerous condition. Second, the Plaintiffs claim that Costco failed to protect them against vehicle incursions which, they further assert, were reasonably foreseeable risks of harm.

On appeal, Plaintiffs argue that the district court's decision is flawed in three primary respects. First, Plaintiffs argue that the district court improperly awarded summary judgment on the element of duty because Costco moved for summary judgment on the element of breach. Second, the Plaintiffs argue that the district court improperly addressed foreseeability as a matter of law, instead of a matter of fact, and thus, reached its decision by applying an improper standard to assess whether the type of harm was foreseeable. Specifically, Plaintiffs argue that they produced sufficient evidence—even though a substantial portion of their evidence was wrongfully excluded by the district court when it ruled on a discovery dispute—suggesting that the category of injury suffered by Plaintiffs was likely enough that a jury could determine that Costco was required to take measures against the possibility of such harms occurring. Lastly, Plaintiffs argue that the district court's ruling that possessors of land owe no duty to protect

invitees against out-of-control vehicles is incongruous with premises-liability law and that the district court's determination rested on generalizations and statements of policy.

In response, Costco argues that the district court properly ruled on the issue of duty because both parties addressed duty throughout their motion practice. Costco argues the district court properly addressed Plaintiffs' claims under the "isolated occurrence" test for premises liability claims based on dangerous conditions, and properly determined that Costco lacked notice of the allegedly dangerous condition. But more than identifying the proper test, Costco further argues that the district court properly determined that Plaintiffs failed to provide any admissible evidence showing Costco had notice of the "dangerous condition" on its premises.

## A. Introduction

This is a negligence case. A common-law action for negligence requires the plaintiffs to prove "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Brooks v. Wal-Mart Stores, Inc.*, 164 Idaho 22, 27, 423 P.3d 443, 448 (2018) (quoting *Griffith v. JumpTime Meridian, LLC*, 161 Idaho 913, 915, 393 P.3d 573, 575 (2017)). Self-evident in the formulation of these elements is that a party cannot be held liable for negligence when there was no legal duty imposed under the circumstances. *See Stevens v. Fleming*, 116 Idaho 523, 525, 777 P.2d 1196, 1198 (1989) ("Analysis of any claim of negligence begins by identification and definition of a duty owed by defendant to plaintiff."); *Jones v. Starnes*, 150 Idaho 257, 260, 245 P.3d 1009, 1012 (2011) ("No liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party.") (citing *Vickers v. Hanover Constr. Co.*, 125 Idaho 832, 835, 875 P.2d 929, 932 (1994)).

"The *existence* of a duty is a question of law over which this Court exercises free review." *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999) (emphasis added) (citing *Freeman v. Juker*, 119 Idaho 555, 556, 808 P.2d 1300, 1301 (1991)). Generally speaking, "[e]very person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury." *Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966) (citations omitted); *see also Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 300, 796 P.2d

8

506, 509 (1990) (noting "the general rule that each person has a duty of care to prevent unreasonable, foreseeable risks of harm to others.").

In contrast to the general duty to exercise due care not to cause harm, the law generally does not impose affirmative duties to protect or assist unless "unusual circumstances" justify such a duty. *See Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 399, 987 P.2d 300, 311 (1999). Determining whether such "unusual circumstances" are present typically requires focusing on the "special relationship" between the parties. *Id.* The presence of a "special relationship" ordinarily depends on whether the defendant possessed a superior level of control or knowledge about the risk than the plaintiff. *Id.*

When certain cases require this Court to consider whether a duty exists where it traditionally has not, *see Alegria v. Payonk*, 101 Idaho 617, 620, 619 P.2d 135, 138 (1980), or if a well-recognized duty extends beyond its prior reach, s*ee Rife v. Long*, 127 Idaho 841, 846, 908 P.2d 143, 148 (1995), this Court has conducted an analysis based on a number of factors and public-policy rationales. *Rife*, 127 Idaho at 846, 908 P.2d at 148. These factors and rationales include:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id.* (citing *Isaacs v. Huntington Mem'l Hosp.*, 695 P.2d 653, 658 (Cal. 1985)). We have emphasized that we engage in this balancing-of-the-harm analysis only "in those rare situations when we are called upon to extend a duty beyond the scope previously imposed, or when a duty has not previously been recognized." *Id.*

## B. Premises Liability

Plaintiffs seek to hold Costco liable for their injuries under a premises-liability theory. Generally speaking, "premises liability" refers to a theory of liability in which a possessor of land[3] is held responsible for injuries that occur on its property which can be attributed to its

---

[3] For sake of readability, this opinion will speak of "possessor of land" when discussing premises liability, but we pause to note that there are nuances to such liability that are not implicated by this case. *See Forbush v. Sagecrest Multi Family Prop. Owners' Ass'n, Inc.*, 162 Idaho 317, 396 P.3d 1199 (2017).

negligence. *See Premises Liability*, Black's Law Dictionary (11th ed. 2019) (defining "premises liability" as "[a] landowner's or landholder's tort liability for conditions or activities on the premises."). In Idaho, the term "premise liability" has been used to narrowly encompass only those injuries incurred either by conditions on the land or by activities that are in some way related to conditions on the land. *See Jones v. Starnes*, 150 Idaho 257, 261, 245 P.3d 1009, 1013 (2011); *Turpen v. Granieri*, 133 Idaho 244, 248, 985 P.2d 669, 673 (1999).

To succeed on a premises-liability claim, the plaintiffs must show that the injury stems from the negligence of the land's possessor, not merely that an injury occurred on the premises. *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 3–4, 607 P.2d 1055, 1057–58 (1980). In other words, strict liability is not the rule—the possessor of land "is not an insurer of . . . [invitees.]" *Martin v. Brown*, 56 Idaho 379, 382, 54 P.2d 1157, 1158 (1936). Rather, "something more" is needed to show that the injury stemmed from the land possessor's negligence. *See Johnson v. Wal-Mart Stores, Inc.*, 164 Idaho 53, 58, 423 P.3d 1005, 1010 (2018).

Idaho adheres to the traditional common-law jurisprudence that developed around premises liability and which limited a possessor of land's liability to injured parties based upon the status of the plaintiff at the time of the injury. *Holzheimer v. Johannesen*, 125 Idaho 397, 399, 871 P.2d 814, 816 (1994). Three classifications of entrants emerged from this jurisprudence—trespasser, licensee, and invitee—and a sliding scale of protection is provided to each. *Id.* This tripartite approach to premises liability law borrowed heavily from mid-19th Century English law. *See* Jon J. Shindurling, *The Law of Premises Liability—Is a Reasonable Standard of Care Unreasonable?*, 13 Idaho L. Rev. 67, 68 (1976) (citing 2 F. Harper & F. James, The Law of Torts 1433 (1956)). These old roots show that although premises liability is now regarded as a branch or species of negligence law, the tripartite system of imposing liability based on the injured party's status predates modern negligence law, and, as such, its common-law roots have been "superimposed" onto negligence law. *See Torts-Abrogation of Common-Law Entrant Classes of Trespasser, Licensee, and Invitee*, 25 Vand. L. Rev. 623, 624 (1972).

Accordingly, the tripartite system's purpose of limiting liability was translated into tort law as legal duties or lack thereof. For instance, to trespassers—those who go "onto the land without permission, invitation or lawful authority"—a land possessor has only a duty "to refrain from willful or wanton acts which might cause injury." *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998) (citations omitted). Licensees, on the other hand, are "visitor[s] who

go[] upon the premises of another with the consent of the landowner in pursuit of the visitor's purpose." *Chapman v. Chapman*, 147 Idaho 756, 762–63, 215 P.3d 476, 482–83 (2009) (quoting *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817). Reflecting the consented-to entry, the land possessor has a duty "to share . . . knowledge of dangerous conditions or activities on the land." *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817 (citation omitted).

Here, it is undisputed that Plaintiffs fall into the last category: "invitees." "An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, or where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner." *Ball v. City of Blackfoot*, 152 Idaho 673, 677, 273 P.3d 1266, 1270 (2012) (quoting *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817).

Invitees trigger the highest duty of care, which is comprised of multiple smaller duties. Traditionally, a land possessor's duty to invitees was to keep the premises in a safe condition and warn the invitee of hidden or concealed dangers. *Otts v. Brough*, 90 Idaho 124, 132, 409 P.2d 95, 98 (1965) ("Owners or persons in charge of property owe to an invitee or business visitor the duty to keep the premises in a reasonably safe condition, or to warn the invitee of hidden or concealed dangers of which the owner or one in charge knows or should know by exercise of reasonable care, in order that the invitee be not unnecessarily or unreasonably exposed to danger."). This duty did not require extraordinary measure[s]; but "only . . . the exercise of ordinary care[.]" *Otts*, 90 Idaho at 131, 409 P.2d at 99.

However, the legal duty owed to invitees has evolved over time. For instance, before the concepts of contributory negligence and assumption of the risk were statutorily abolished by the adoption of the comparative-fault statute (as recognized in *Harrison v. Taylor*, 115 Idaho 588, 595, 768 P.2d 1321, 1328 (1989)), a fundamental tenet in premises-liability law was that a land possessor had no duty to protect or warn the invitee about an open and obvious danger. As such, much of this Court's pre-*Harrison* premises-liability jurisprudence focused on the physical condition of the property, assessing whether it was a "hidden danger" such as "traps, snares, pitfalls and the like." *Alsup v. Saratoga Hotel*, 71 Idaho 229, 236, 229 P.2d 985, 989 (1951). When this Court noted that the "open and obvious doctrine" would be abolished, it appreciated that its absence would require a new understanding of the conceptual underpinning of premises-liability law, and elected to "simplif[y]" the duty owed to invitees to a duty of ordinary care

11

under the circumstances. *Harrison*, 115 Idaho at 595, 768 P.2d at 1328 ("Henceforward, owners and occupiers of land will be under a duty of ordinary care under the circumstances towards invitees who come upon their premises."). This new understanding of duty did not eliminate the old grounds of liability for dangerous conditions on the land and the requirement that the land be made safe. Rather, the modern iteration of a land possessor's duty to invitees subsumed this prior duty. *See Morgan v. State, Dep't of Pub. Works*, 124 Idaho 658, 664, 862 P.2d 1080, 1086 (1993); *Brooks*, 164 Idaho at 28, 423 P.3d at 449 (citing *All v. Smith's Management Corp.*, 109 Idaho 479, 481, 708 P.2d 884, 886 (1985)); *Johnson*, 164 Idaho at 58, 423 P.3d at 1010.

In addition to the duty to employ reasonable care, a land possessor owes an affirmative duty to invitees to protect and warn against danger: "[A] possessor of land who holds his land open to members of the public who enter upon the land in response to his invitation" creates a "special relationship" that imposes on the possessor of land an affirmative duty to act. *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 401, 987 P.2d 300, 313 (1999) (citing Restatement (Second) of Torts § 314A (1965)). The affirmative duty reflects the age-old principle that, because the land possessor effectively throws open his property to the public for business, an invitee is entitled to visit and assume that the premises have been made safe for his visit. *See Carr v. Wallace Laundry Co.*, 31 Idaho 266, 270, 170 P. 107, 108 (1918) ("A person who invites another to come on his premises upon a business in which both are concerned is bound to take care that his premises and all appliances provided by the owner as incident to the use of his premises are safe for that other person to come upon and use them as required; or else to give due warning of any danger to be avoided."); *Williamson v. Neitzel*, 45 Idaho 39, 45, 260 P. 689, 690 (1927) ("Defendant maintained a general automobile sales, supply, repair, and garage business, and impliedly invited the public therein . . . and owed a duty to persons entering his premises for such purpose of maintaining the same in a reasonably safe condition and of exercising reasonable care in protecting such persons from injury.").

For instance, this Court has held that a land possessor can be liable for failing to protect invitees against the foreseeable negligence or criminal acts of third parties. *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 796 P.2d 506 (1990) (holding that owners and contractors had duty of care to prevent unreasonable foreseeable risk of harm to workers). The Court of Appeals has held that "a tavernkeeper owes [its patrons] a duty to exercise reasonable care to protect them from

reasonably foreseeable injury at the hands of other patrons." *See McGill v. Frasure*, 117 Idaho 598, 601, 790 P.2d 379, 382 (Ct. App. 1990).

Likewise, section 344 of the Restatement (Second) of Torts provides that a possessor of land who holds it open for the public to enter for business purposes is subject to liability to members of the public for physical harm caused by the negligent acts of third persons. Restatement (Second) of Torts § 344 (1965); *see also Keller v. Holiday Inns, Inc.*, 105 Idaho 649, 654, 671 P.2d 1112, 1117 (Ct. App. 1983), *decision reviewed,* 107 Idaho 593, 691 P.2d 1208 (1984). Under the Second Restatement, a warning can be sufficient depending on the circumstances, unless it is a "situation[] in which the possessor cannot reasonably assume that a warning will be sufficient," in which case the possessor is "required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons . . . may conduct themselves in a manner which will endanger the safety of the visitor." Restatement (Second) of Torts § 344 cmt. d (1965).

Under the most recent Restatement, the affirmative duty owed to an invitee by a possessor of land who holds it open for general admission also extends to risks created by third parties. Restatement (Third) of Torts: Phys. & Emot. Harm § 40 (2012) ("The duty described in this Section applies regardless of the source of the risk" and thus "applies to risks created by the individual at risk as well as those created by a third party's conduct, whether innocent, negligent, or intentional.").

## C. The district court's decision improperly focused on the duty to maintain safe premises to the exclusion of the duty to use reasonable care.

The Plaintiffs' theory of negligence articulated in the complaint implicates two of a land possessor's duties—the duty to keep the premises in a reasonably safe condition and the duty to employ ordinary care to protect from reasonably foreseeable dangerous acts of third parties. Here, the district court's analysis focused on the dangerous-condition aspect, which stems from a land possessor's duty to take ordinary care not to create a risk of harm under the circumstances. However, the district court did not address whether Costco took adequate measures to protect its invitees against the risk of third party negligence as part of its affirmative duty given the parties' special relationship. These duties overlap given the facts of this case, so both analyses are required.

This Court's jurisprudence delineates what a plaintiff must prove to state a prima facie case of negligence based on a dangerous condition. We have emphasized that the land

possessor's knowledge of a dangerous condition is critical to showing that the injury arose from the land possessor's negligence, rather than just occurring on the premises. *See Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 3, 607 P.2d 1055, 1057 (1980) (noting that the plaintiff must show that "the owner or occupier knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition."); *Johnson v. Wal-Mart Stores, Inc.*, 164 Idaho 53, 57, 423 P.3d 1005, 1009 (2018).

Depending upon the circumstances of the condition causing the injury, plaintiffs have a few methods by which they may satisfy their prima facie burden. For instance, when the dangerous condition is an "isolated occurrence," e.g., temporary or transient, a plaintiff must prove that the land possessor knew, or should have known, of the specific dangerous condition that caused the injury. *Tommerup*, 101 Idaho at 3, 607 P.2d at 1057; *Johnson*, 164 Idaho at 57, 423 P.3d at 1009. Of note, constructive notice—knowledge of a condition that the exercise of reasonable care would have revealed—is sufficient. *All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 481, 708 P.2d 884, 886 (1985). This is the traditional view of liability for a dangerous condition, and rests on the rationale that, because the condition is unexpected and out of the ordinary, the possessor of land would need to be aware of that *specific* condition before it could be said that the possessor of land was negligent for allowing it to exist. *See All*, 109 Idaho at 481, 708 P.2d at 886 (noting that the "basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary" and, as a consequence of its rarity, "the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employee's) acts."); *Johnson*, 164 Idaho at 58, 423 P.3d at 1010 (citing *Shea*, 158 Idaho at 548, 328 P.3d at 528).

However, if circumstances allow, a plaintiff may seek to prove the land possessor's knowledge of the dangerous condition by showing that the land possessor's "operating methods" (i.e., how they run their business on a daily basis) were "such that dangerous conditions are continuous or easily foreseeable." *All*, 109 Idaho at 481, 708 P.2d at 886 (citations omitted). Under this method, knowledge is still needed, but plaintiffs are no longer required to prove it by actual or constructive notice of the specific condition. *Id.* The rationale under this theory is that plaintiffs need not prove notice of the specific condition because either (i) the land possessor's actions cause a dangerous condition to occur continually, or (ii) the nature of its operations are such that one would reasonably anticipate them to create dangerous conditions. *See id.* (noting

that when "the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable," then "the logical basis for the notice requirement dissolves."); *see also Jasko v. F.W. Woolworth Co.*, 494 P.2d 839, 840 (Colo. 1972).

Under this framework, the district court ruled that Costco owed no duty to protect Plaintiffs from an out-of-control vehicle because such an injury was not an "easily foreseeable" consequence of Costco's mode of operation, or, alternatively, that it was unforeseeable as a matter of law, and thus, Costco owed no duty to Plaintiffs. We cannot agree.

We initially note that this Court has expressed reluctance to affirm summary judgment rulings for the defense based upon the absence of duty, and, as such, no-duty rulings will be met with scrutiny. *Harrison v. Taylor*, 115 Idaho 588, 593, 768 P.2d 1321, 1326 (1989); *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984); *McKinley v. Fanning*, 100 Idaho 189, 595 P.2d 1084 (1979).

We also note that the facts of this case and the allegations in the complaint require more than a general negligence analysis and a focus on Costco's affirmative duty rather than strict adherence to the dangerous-condition analysis. *Pittman v. Sather*, 68 Idaho 29, 40, 188 P.2d 600, 607 (1947) ("Negligence is seldom absolute, for whether an act is or is not negligent generally depends upon attendant facts and circumstances."). Effectively, this is a case that "straddles the line between the ordinary duty of reasonable care and an affirmative duty." Restatement (Third) of Torts: Phys. & Emot. Harm § 40 (2012). The dangerous-condition analysis has been used by this Court to address negligence cases that can be characterized as "slip-and-fall" or "trip-and-fall" cases, which focus solely on a land possessor's ordinary duty of care to maintain safe premises. *See, e.g.*, *Johnson*, 164 Idaho at 55, 423 P.3d at 1007 (arising from the plaintiff's slip and fall in the aisle of a supermarket); *Brooks v. Wal-Mart Stores, Inc.*, 164 Idaho 22, 423 P.3d 443 (2018) (arising from the plaintiff's slip and fall on liquid in a supermarket by a self-serve, carpet-cleaning machine kiosk); *Shea v. Kevic Corp.*, 156 Idaho 540, 328 P.3d 520 (2014) (arising from the plaintiff's slip and fall on ice outside a car wash); *All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 708 P.2d 884 (1985) (arising from the plaintiff's trip and fall caused by a pothole in a supermarket's parking lot); *McDonald v. Safeway Stores, Inc.*, 109 Idaho 305, 707 P.2d 416 (1985) (arising from the plaintiff's slip and fall on melted ice cream in an aisle of grocery store); *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980) (arising from the plaintiff's slip and fall on a cupcake wrapper outside a grocery store).

Here, more so than the cases previously cited, the Plaintiffs' cause of action implicates Costco's affirmative duty to employ reasonable care to protect its invitees from third-party negligence. As such, rather than the dangerous condition being the sole basis of liability, Plaintiffs allege that the dangerous condition was a factor that both contributed to the accident (by effectively funneling pedestrians into the zone of danger) and demonstrated Costco's failure to adequately protect against incursion (because of the Walkway's lack of curb, bollards, or warning signs).

Refocusing this case on Costco's affirmative duty requires us to comment on the proper role of foreseeability. Here, the likelihood of vehicle incursions into the Walkway was part of the factual equation the jury could consider in determining whether Costco complied with its duty to exercise ordinary care to protect its invitees from harm. This Court's case law is clear that when an ordinary duty of reasonable care is the standard, the foreseeability of the harm is a question of fact for the jury. *See Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 301, 796 P.2d 506, 510 (1990). Even in the dangerous-condition context, the reasonable foreseeability of the harm is used as a surrogate for proving knowledge which, if disputed, is a question for the jury. *See Shea*, 156 Idaho at 549, 328 P.3d at 529 (holding that the issue of knowledge is a question of fact that can preclude summary judgment).

So while foreseeability can be a factor for the court to consider in the "rare" cases when this Court engages in a weighing of the harms, this is not a case that requires us to conduct such an analysis. Here, the existence of a duty is uncontested—a business owner owes its invitees an affirmative duty to exercise ordinary care and warn of dangerous conditions. *See Brooks*, 164 Idaho at 32, 423 P.3d at 453; *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 399, 987 P.2d 300, 311 (1999). Thus, there was no need for the district court to make a ruling on duty because Costco did not challenge its duty to invitees, nor was this one of the "rare" cases seeking to extend a duty or recognize a new one. For example, whether or not the injured individual is trespasser, licensee, or invitee can be a jury question when the underlying facts of the nature of the relationship are disputed. *See Holzheimer v. Johannesen*, 125 Idaho 397, 399, 871 P.2d 814, 816 (1994). But once those facts are established, the Court assesses the relationship and applies the correct duty. Restatement (Third) of Torts: Phys. & Emot. Harm § 40 (2012) ("Whether or not a particular type of relationship supports a duty of care is a question of law for the court.").

16

As such, to the extent that the district court addressed questions of foreseeability as informing its decision to recognize a duty, this approach was incorrect.

With the understanding that the Plaintiffs' cause of action implicates Costco's duty to exercise ordinary care, any questions about the foreseeability of a vehicle incursion into the Walkway raises the core question of negligence: did Costco fail to exercise reasonable care by neglecting to install a curb or barriers given the likelihood and severity of the risk harm? As such, it is a question of fact for the jury to decide because the liability stems from weighing the foreseeability of the harm against the store's alleged failure to take appropriate measures. *Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966) ("The degree of care to be exercised must be commensurate with the danger or hazard connected with the activity."). In this manner, questions about the foreseeability of vehicular incursions are part and parcel of determining whether Costco breached its duty of reasonable care given the protections it provided to prevent third party harm to customers. Thus, a reasonably foreseeable harm is not a prerequisite to duty; rather, it is part of the calculus a jury will use to determine whether Costco breached its duty of care. *See Brooks*, 164 Idaho at 29, 423 P.3d at 450 (noting that whether a land possessor's failure to take precautions, educating itself about a self-serve kiosk, or take a more active role in protecting its invitees from such harms could form the basis of liability); *Sharp*, 118 Idaho at 300–01, 796 P.2d at 509–10 ("Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required . . . [but] where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required."); *see also* Restatement (Second) of Torts § 343 (1965).

To be clear, there are situations where courts may decline to recognize or extend a legal duty. When doing so, strong public policy reasons carry the day. We are not insensitive to the policy rationales expressed by Costco in its briefing and by the lower court in its decision, but we find that those concerns do not require a blanket "no-duty" ruling. Principally, the policy concerns articulated by the district court focused too much on the specifics of this case and not enough on the general duty owed by land possessors to their invitees. For instance, while the district court noted that finding that Costco owed a duty to protect Plaintiffs from out-of-control vehicles that struck pedestrians on its Walkway would discourage it from building walkways, this fails to take into consideration that a jury may still find that Costco complied with its duty of ordinary care by providing a Walkway with wheel stops. The concern about "insurer-like

17

liability" is faulty for the same reason—the jury must still find that the injuries are traceable to Costco's negligence. Insurer-like liability is strict liability, which is not the rule in Idaho. Likewise, while the district court theorized that only an impregnable barrier would be sufficient, we disagree. When the jury is ultimately asked whether the store breached its duty by examining the precautions taken in light of the foreseeability of the harm, they will decide whether enough was done. So, while a jury may conclude that a stronger barrier would be required at a truck stop, it may conclude that fewer protections are needed at a different business. Or, perhaps a jury would find that the likelihood of such accidents did not justify reinforced barriers, and that barriers that met the general risk were sufficient. The point is that this is the province of the jury, not a question for a trial judge to make on summary judgment.

This is not to say that possessors of land are stripped of their ability to succeed at summary judgment. When the facts of a particular case are so out of the ordinary, the question is not whether the facts obviated the duty owed, but whether the circumstances were so unforeseeable that the Court can take the question away from the jury because no reasonable juror could determine that the defendant breached its duty by failing to take adequate care given how unforeseeable the harm was. I.R.C.P. 56. This standard ensures that the jury addresses the core questions of whether the defendant's actions were reasonable in cases where reasonable minds could differ. In such cases, the reasonableness of the conduct is assessed by the collective barometer of the common sense and combined human experience of multiple jurors, rather than one judge.

**D. We agree with the modern approach of the case law on this issue.**

Many of the cases cited by the district court fall under the category discussed immediately above, where no reasonable juror could find the land possessor negligent under the facts of the case. That is, these cases, even though some were decided on "no-duty" grounds, involve vehicles with paths of travel so out of the ordinary, or vehicles that surmounted or penetrated very strong or numerous barriers, such that no reasonable juror could have found the store negligent for failing to take additional measures. *See, e.g.*, *Albert v. Hsu*, 602 So. 2d 895, 896 (Ala. 1992) (not reasonably foreseeable that a car would back "across the parking lot from a parking space, over a six-inch curb, across a sidewalk, and through the wall," injuring plaintiff); *Glick v. Prince Italian Foods of Saugus, Inc.*, 514 N.E.2d 100, 101 (Mass. App. Ct. 1987) (an out-of-control automobile operated by a third party veered off a highway at a high rate of speed,

went over a city-owned strip of land, through the defendant's parking lot, over 8-inch bumper stops, and crashed through the solid exterior wall of the defendant's restaurant, injuring a customer); *Mack v. McGrath*, 150 N.W.2d 681, 682 (Minn. 1967) (motor vehicle jumped curb, broke through a plate-glass window, and "propelled fixtures and furniture against the plaintiff" who was working inside the building); *Cromer v. Hutto*, 280 S.E.2d 202, 203 (S.C. 1981) (incident where "[t]he car jumped over a curb, went through a shrubbery row and over a retaining wall."); *Carpenter v. Stop-N-Go Markets of Ga., Inc.*, 512 So. 2d 708, 709 (Miss. 1987) (no duty to protect against vehicular crashes into a convenience store); *Howe v. Stubbs*, 570 A.2d 1203, 1203 (Me. 1990) (motorist's brakes failed on a hill opposite store, causing it accelerate down the hill, across the street and crash into the granite steps and the foyer of store where plaintiff was standing); *Dawkins v. Mastrangelo*, 26 N.Y.S.3d 569 (N.Y. App. Div. 2016) ("motor vehicle crashed through the glass doors" of the building); *Skubovious v. Clough*, 670 N.E.2d 578, 580 (Ohio 1996) (automobile "went over the raised curb, across the sidewalk and into the front of the store."); *Heard v. Intervest Corp.*, 856 So. 2d 359, 361 (Miss. Ct. App. 2003) (nine-year-old driving her inebriated father home sped through the apartment complex's parking lot, jumped the curb, and ran into the sitting area); *Eckerd-Walton, Inc. v. Adams*, 190 S.E.2d 490, 491–92 (Ga. Ct. App. 1972) (vehicle going over five-inch curb, sidewalk, eight-inch brick wall, and "through the plate glass window"); *Carter v. Gambulous*, 748 P.2d 1008, 1009 (Okla. Civ. App. 1987) (vehicle "crashed through the window of Appellee's business."); *Marcroft v. Carvel Corp.*, 502 N.Y.S.2d 245 (N.Y. App. Div. 1986) (vehicle crashing "through the storefront window"); *Jefferson v. Qwik Korner Mkt., Inc.*, 34 Cal. Rptr. 2d 171, 172, 175 (Ct. App. 1994) (vehicle "jumped *both* the parking blocks and the curb, injuring [the plaintiff]."); *Achtermann v. Bussard*, 2007 WL 901642, at *1 (Del. Super. Ct. Mar. 22, 2007) (unpublished opinion) (vehicle drove "over the curb in front of the store, across the sidewalk, and through the store front."); *Sotomayor v. TAMA I, LLC*, 617 S.E.2d 606, 611 (Ga. Ct. App. 2005) (vehicle drove over a concrete curb and a sidewalk to strike children playing on the grass 17 feet away); *Schoop's Rest. v. Hardy*, 863 N.E.2d 451, 456 (Ind. Ct. App. 2007) (vehicle "jump[ed] a curb[] and traverse[d] the Restaurant parking lot before finally colliding with the wall of the Restaurant structure."); *Mayeur v. Time Saver, Inc.*, 484 So. 2d 192, 195 (La. Ct. App. 1986) (vehicle drove across parking lot, "over the curb, across the walkway and into a patron about to enter the store.").

Still others cases relied on the policy rationales that recognition of a duty to protect against out-of-control vehicles would leave land possessors with unlimited, insurer-like liability as originally stated in *Schatz v. 7–Eleven, Inc.*, 128 So. 2d 901, 904 (Fla. Dist. Ct. App. 1961). *See Albert*, 602 So. 2d at 898; *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 782 (S.C. Ct. App. 2010); *Grandy v. Bavaro*, 521 N.Y.S.2d 956 (N.Y. App. Div. 1987); *Fawley v. Martin's Supermarkets, Inc.*, 618 N.E.2d 10, 14 (Ind. Ct. App. 1993); *Davis v. Wal-Mart Stores, Inc.*, 64 F. Supp. 2d 1176, 1180 (M.D. Ala. 1999); *Estate of Richard Myers v. Wal-Mart Stores, Inc.*, 2011 WL 1366459, at *5 (E.D.N.C. Apr. 11, 2011).

So, while the district court cited 26 different cases for the proposition that a possessor of land owes no duty to its invitees to protect against out-of-control vehicles as the "majority rule," we are hard pressed to call this the appropriate approach. For one, totaling the number of jurisdictions which actually follow this approach only results in 13 states—not 26. In addition, many of these cases failed to garner unanimous opinions. *See Cromer*, 280 S.E.2d at 204 (3-2 decision); *Fawley*, 618 N.E.2d at 14 (2-1 decision); *Grandy*, 521 N.Y.S.2d 956 (3-1 decision); *Heard*, 856 So. 2d at 361 (8-1 decision); *Carpenter*, 512 So. 2d at 710 (four Justices specially concurring to "doubt the wisdom . . . of declaring as a matter of law that the owner of a public business is *never* under any duty to erect some kind of barrier to prevent motor vehicles from running through the building walls."). And several were only a few paragraphs in length. *Carter*, 748 P.2d at 1009; *Marcroft*, 502 N.Y.S.2d 245; *Grandy*, 521 N.Y.S.2d 956; *Dawkins*, 26 N.Y.S.3d 569; *Howe*, 570 A.2d at 1203. Another addressed foreseeability as a question of breach. *Mims v. Bradford*, 503 So. 2d 1083, 1085 (La. Ct. App. 1987), *writ denied,* 504 So. 2d 556 (La. 1987) ("The legal question is whether these defendants breached the duty of reasonable care owed to the store patrons [and] [w]e agree . . . that defendants' duty did not encompass the risk that a motorist would drive his vehicle over the elevated sidewalk into a patron about to enter the store.").

As the district court noted, some of these courts distinguished cases which hold that a duty applies under these circumstances by grouping them into categories such as (1) businesses that provide no protection for encroaching vehicles; (2) businesses that had knowledge of prior incidents; and (3) the business's design required customers to await service or congregate in areas close to a parking lot or driveway. *See, e.g.*, *Jefferson*, 34 Cal. Rptr. 2d at 173–74. But these factual groupings miss the substantive distinction between declaring that a possessor of

20

land's duty to exercise reasonable care does not include protecting invitees from third party negligence as a matter of law versus a judicial finding of no negligence as a matter of law because the harm was so unforeseeable that no reasonable juror could have found the defendant negligent.

Finding that the duty to exercise reasonable care does not include protecting against errant vehicles on foreseeability grounds makes sense when there have been no prior incidents, when the vehicle's path of travel significantly diverges from the ordinary route, and when the protections offered by the property are customary. We think the average juror would agree with the district court in such cases that the land possessor is not negligent. However, a no-duty ruling becomes more difficult to square on foreseeability grounds when there has been more than one incident. *Carpenter*, 512 So. 2d at 709 (no duty to protect against vehicular crashes into a convenience store even though a car had previously jumped the curb and struck the store front of the store). That said, there is a possibility a jury could find that a business still took the necessary precautions even if there were two prior incidents depending on the nature of the incidents and the extent of the protections offered. *See Mack*, 150 N.W.2d at 686 ("The fact that over a period of five years two automobiles had gone over curbs and struck buildings did not, in our opinion, impose on the landowner a duty to anticipate and prevent the possibility of injury from other runaway vehicles."). However, we find it difficult to adopt a rule of law that would that allow a business to escape liability for a plaintiff's injuries sustained from an errant vehicle based on lack of foreseeability when the business had had three similar incidents on prior occasions. *See Howe*, 570 A.2d at 1203. There is still a possibility that jury might find that the defendant was not negligent under such circumstances, depending upon the specific facts of the incident at issue and the prior incidents. The fact is that the jury is the appropriate arbiter for resolving such issues rather than having the trial court rule such incidents unforeseeable as a matter of law. Indeed, one wonders how many cases must be published declaring that runaway vehicles are unforeseeable as a matter of law before the resulting paradox created by such a body of law become logically untenable. As the Plaintiffs' expert's reports show, there is an entire portion of industry and literature dedicated to designing parking lots in such a way to adequately account for errant vehicles.

Rather, we align ourselves with the more recent cases which hold that the foreseeability of a vehicular incursion is not question of law, but of fact. *See State Farm Fire & Cas. Co. v.*

21

*Bell*, 30 F. Supp. 3d 1085, 1119 (D. Kan. 2014); *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1060 (Ill. 2006); *Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 326 P.3d 465, 473 (N.M. 2014); *Springtree Props., Inc. v. Hammond*, 692 So. 2d. 164, 168 (Fla. 1997). We agree with the Illinois Supreme Court in regard to why creating an exemption within a business's duty to its invitees is not sound policy:

> In the case of a business invitee harmed by the negligent act of a third person, the policy justifying the business invitor's duty of reasonable care is related to the affirmative action the invitor takes in opening his business to the public and to the potential for harm that a business open to the general public poses. Thus, the policy subjecting defendants to liability in this case is clear. On the contrary, the no-duty rule defendants would have this court adopt lacks a sound basis in policy. As one treatise states, "Rules declaring that no duty exists can easily be made too broad or too narrow. Because they are rules of law, not decisions about particular cases, they cover all cases in the category to which they are addressed. They are expressions of 'global' policy rather than evaluations of specific facts of the case. Consequently, no-duty rules should be invoked only when all cases they cover fall substantially within the policy that frees the defendant of liability." 1 D. Dobbs, Torts § 227, at 579 (2001). Here, none of the considerations defendants rely on compel us to hold that, as a matter of law, landholders who open their land to the public for business purposes have no duty to protect invitees against out-of-control drivers. We see no merit in such an exemption.

*Marshall*, 856 N.E.2d at 1060 (citation omitted). That this is also the approach of the new Restatement (Third) of Torts is no accident.

Accordingly, we must now turn to whether Plaintiffs produced enough evidence to create a genuine issue of disputed material fact as to whether Costco failed to take adequate measure to protect against the reasonably foreseeable harm. This requires evidence showing (1) that there was a reasonably foreseeable harm of vehicular incursions in to the Walkway; and (2) Costco's protective measures were not reasonable in light of that risk of harm. If so, then the question is whether, viewing that evidence in the light most favorable to the Plaintiffs, any reasonable juror could find Costco failed to take reasonable precautions in light of the risk of harm. To do so, we must first address Plaintiffs' two issues on appeal relating to the evidentiary record in this case.

### E. The district court did not abuse its discretion by granting Costco's protective order and Plaintiffs failed to secure an adverse ruling based on the district court's comments.

Plaintiffs argue that the district court abused its discretion by improperly narrowing the scope of discovery by granting Costco's protective order. In support, Plaintiffs cite to the district

court's decision to grant Costco's protective order, but primarily focus on the district court's *comments* that followed. These comments, Plaintiffs claim, "tainted all discovery in the case" and "effectively narrowed the scope of discovery to only vehicular accidents/incursions that occurred in the ADA parking areas of Costco's parking lots, where a car intruded into an adjacent pedestrian walkway because the driver experienced pedal error." In response, Costco highlights the broad categories and definitions included in the stricken Second Set of Discovery. It argues that the Second Set of Discovery did not seek "substantially similar" evidence because it sought information on accidents from other locations and on accidents that did not involve ADA walkways. Costco points out that Plaintiffs took an all-or-nothing approach to discovery with the Second Set of Discovery, but were allowed to seek more discovery when that request was denied as overbroad. For the reasons set forth below, we determine that (i) the district court did not abuse its discretion by granting Costco's protective order because Plaintiffs' initial requests were overbroad, and (ii) Plaintiffs' assignments of error regarding the district court's comments were not preserved for appellate review because Plaintiffs failed to secure an adverse ruling.

Control of discovery is within the trial court's discretion and is reviewed for an abuse of discretion. *Westby v. Schaefer*, 157 Idaho 616, 621, 338 P.3d 1220, 1225 (2014) (citing *Vaught v. Dairyland Ins. Co.*, 131 Idaho 357, 360, 956 P.2d 674, 677 (1998)). Thus, this Court asks whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Idaho Rule of Civil Procedure 26 defines the information a party may seek during discovery:

> General Scope of Discovery. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

I.R.C.P. 26(b)(1)(A).

Plaintiffs are correct to point out that "[t]he scope of discovery encompasses far more than what will be considered admissible under the Idaho Rules of Evidence." *Phillips v. E. Idaho Health Servs., Inc.*, 166 Idaho 731, 743, 463 P.3d 365, 377 (2020) (citing I.R.C.P. 26(b)(1)(A)) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). However, the Rules also detail the district court's authority to define that universe of "relevant information":

> (C) Limits on Frequency and Extent of Discovery. Unless limited by these rules or the court orders otherwise, the frequency of use of discovery is not limited. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

I.R.C.P. 26(b)(1)(C).

This provision mirrors its federal analog. The commentary to Federal Rule of Civil Procedure 26 reveals that it was "intended to address the problem of 'disproportionate' discovery," meaning that "it was no longer sufficient to show that the proposed discovery was relevant; the court was still required to limit the discovery if it would be unduly burdensome or expensive." *See* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 26. "The 1983 Committee Note pointed out that courts had long been limiting discovery on these or similar grounds, stating that this ostensibly new power 'reflect[ed] the existing practice of many courts in issuing protective orders under Rule 26(c).'" *Id.* A plaintiff must show prejudice from a court's grant of a protective order. *Cosgrove By & Through Winfree v. Merrell Dow Pharm., Inc.*, 117 Idaho 470, 474–75, 788 P.2d 1293, 1297–98 (1989).

This issue on appeal requires a few observations about the procedural context of Costco's request. Costco sought a protective order arguing that the Second Set of Discovery was overly broad and burdensome. The Plaintiffs defended their requests as relevant and proportional to the needs of the case, but noted in its briefing that "it was willing to consider *reasonable*

24

limitations," such as "the Court [limiting] Plaintiffs' requests to information and documents relating to vehicle-pedestrian collisions in Costco parking lots within the United States, and pedestrian safety measures considered or implemented by Costco at its domestic locations, in the last ten years." (emphasis added). After a hearing on the matter, the district court granted Costco's motion, ruling that Costco was under no obligation to respond to the Second Set of Discovery. It later entered a written order to that effect. The district court noted that, as drafted, the Second Set of Discovery "call[ed] for Costco to disclose on a nationwide basis any incident in which it is aware of a vehicle impacting anything."

Here, we are satisfied that the district court did not abuse its discretion in granting Costco's request for a protective order. While the district court did not expressly recognize its discretion to grant the protective order, its reasoning on the record and its comments about what it might find acceptable in a new request demonstrate that it appreciated the decision was within its discretion. In ruling on Costco's motion, the district court recognized the outer boundary of its discretion by commenting on the two possible legal grounds for ruling on the motion: overbreadth and whether the request was likely to lead to admissible evidence. Recalling that a court can limit the extent of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues," the following comments by the district court show that the court acted consistently with the legal standards applicable to the specific choices available to it, and reached its decision by the exercise of reason:

> As a general matter the contention is that the various discovery requested in that set of discovery requests are overly broad and seek discovery that is, as a result, not reasonably calculated to lead to admissible evidence.

> For the most part, even if you could drill down or narrow down a number of these requests and find that they may call for—they make all four properly discoverable things along with a number of other things, there well beyond the bounds of discovery period so that's, I suppose, a summary of Costco's position.

> It would seem as though plaintiff's[sic] at this point recognized that they have overbreadth problems with many of these requests, if not all of them.

> I will indicate, as I said before, I have reviewed all of these discovery requests. As I look through them, there isn't a single one that I think isn't overly broad. They, among other things, call for Costco to disclose on a nationwide basis any incident in which it is aware of a vehicle impacting anything. A vehicle isn't supposed to impact within one of its parking lots anything, or anytime, a vehicle

25

in one of its locations, goes somewhere it shouldn't go irrespective of any connection to the particular circumstances of the accident at issue in this case, so I think they're unduly broad.

I would—I would Say that I don't think that—that it is appropriate for one side to shoot for the moon, so to speak, and ask for everything in anything under the sun and then use a hearing on a motion for a protective order as a sort of negotiation whereby the court is expected to replace plainly unreasonable discovery requests with an arrow set that would be reasonable. I think this is just well beyond the bounds of reasonableness in terms of scope. They're very much too broad.

I would indicate that is even the case with respect to the request for admission. As I look at all those requests for admissions—I believe there numbered 27 through 34—if I were to assume hypothetically that Costco admitted all of those rather than seeking a protective order, I don't believe the answers would be admissible at trial because the questions are so broad as to be meaningless in the context of the dispute that is to be litigated in this case. So for all those reasons, I'm going to grant the motion for a protective order. I'm just going to grant it completely. Costco is under no obligation to respond to this set of discovery requests whatsoever. Its objections have been sustained.

Admittedly, the district court appears to have applied the incorrect evidentiary standard when discussing the request for admissions. That is, the district court appears to have assessed whether the admissions would be admissible at trial, rather than whether the admission would lead to the discovery of admissible evidence. *Phillips*, 166 Idaho at 743, 463 P.3d at 377 (citing I.R.C.P. 26(b)(1)(A)). However, that reasoning was only an extraneous comment attached to the larger reason for its decision—that Plaintiffs were seeking everything under the sun with no reasonable limitations on scope and were using the hearing as a forum to negotiate the limits of discovery.

Perhaps this is why Plaintiffs' briefs offer little to defend the broad scope and expansive definitions used in the Second Set of Discovery. Plaintiffs sought information in documents relating to "vehicular accidents" and "vehicular incursions," and defined those terms broadly. For example, "Vehicular accident" included "any contact between a vehicle and any other object, including a person or inanimate object." "Inanimate object" was further defined to include "a signpost, a bollard, a planter, a building, a shopping cart, a tree, or a parking bumper or real stop." Likewise, Plaintiffs asked Costco to identify all such incidents and incursions at any of Costco's warehouses (presumably including its overseas locations) over the past 10 years. Plaintiffs also sought all documents relating to any studies, articles, inspections, or assessments

26

relating to vehicular accidents or incursions that either took place at their warehouses or that they were aware of.

As written, the Second Set of Discovery includes requests that fall under the proportionality guidelines of Rule 26(C). Here, "substantially similar" would encompass a vehicle-on-pedestrian incident that occurred at or near a pedestrian only walkway. Under the Second Set of Discovery, however, Costco would not only be required to inquire and report all car-on-car accidents at Costco locations, (which one can fairly question the likelihood that such information could lead to admissible evidence given the pedestrian-focused nature of the cause of action), but also all car-on-shopping-cart collisions (which is very unlikely to lead to relevant evidence given the cause of action). Likewise, Plaintiffs failed to designate which employees or what categories of employees would need to have been aware of the news articles or studies for Costco to disclose it. Hypothetically, one may wonder how Costco might discover that one of its Omaha receipt-checkers read an article about pedal error in 2009. One may also question how that information might help the Plaintiffs' case. While we are mindful that a purpose of Rule 26 is "to promote candor and fairness in the pre-trial discovery process," *Westby*, 157 Idaho at 623, 338 P.3d at 1227, we fail to see how many of these request are "*reasonably* calculated to lead to the discovery of admissible evidence." I.R.C.P. 26(b)(1)(A) (emphasis added). Given the discovery dispute before it, the district court properly exercised its discretion by striking the Second Set of Discovery and allowing the Plaintiffs to redraft their discovery.

Plaintiffs next choose to assail the narrowness of the comments the district court voiced to the parties about what to consider moving forward with discovery. A review of the procedural record of these comments shows that they were merely the court's thoughts and comments, and that Plaintiffs never actually secured an adverse ruling. To the extent the district court took an active interest in solving discovery disputes, we commend the court's appropriate commentary and insights.

Immediately after ruling from the bench, the district court offered comments and "general thoughts" on what it would likely permit. The court remarked that Plaintiffs might narrow their focus on matters of company-wide discovery such as "incursions into pedestrian walkways." Or, the court explained, the Plaintiffs could try to seek information from a central risk-management database, or focus on situations where a vehicle surmounted obstacles similar to the Incident, noting that a car striking someone in the middle of the parking lot would likely not be relevant.

In a similar vein, the court suggested that Plaintiffs could focus on whether Costco had any knowledge of the various studies detailing the alleged problems that led to the incident.

Importantly, the district court made clear to the parties that it was not making a ruling:

Now, it does occur to me that it may make some sense to try to offer comments, *not a ruling*, on what I may permit if the parties are not able to work something out when the plaintiffs go back to the drawing board and serve presumably a narrower set of discovery requests. So I'll offer some thoughts along those lines, and just, again, *indicate that these fall short of rulings.*

(Emphasis added).

Afterward, in response to the district court's guidance, Plaintiffs submitted a "revised" Second Set of Discovery (Revised Second Set of Discovery). Costco again responded with a second motion for a protective order, arguing that the Revised Second Set of Discovery was not materially different from its precursor. Plaintiffs opposed, arguing that the Revised Second Set had significantly narrowed the scope of the previous Second Set of Discovery, and that Costco's counsel had not met and conferred to try to resolve the dispute without court action. The district court, rather than granting or denying the motion, noted that Costco's counsel had not complied with Rule 26(c) because he failed to attach an affidavit certifying that he "ha[d] in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." I.R.C.P. 26(c)(1). As such, the court reset the hearing on the motion to allow the parties a chance to meet and confer.

The parties later met, conferred, and reached an agreement about how to narrow the issues, ultimately submitting a joint stipulation to continue the hearing on the second motion for a protective order. The parties' agreement is evidenced by an email exchange, which provided that the parties agreed to:

- Limit requests regarding prior incidents to those which occurred in ADA parking areas and adjacent sidewalks/paths, as well as sidewalks on the exterior premises of Costco warehouses;

- Narrow the request regarding design standards relating to ADA parking areas and adjacent sidewalks/paths, as well as sidewalks on the exterior premises of Costco warehouses;

- Narrow requests relating to the use of bollards or other barriers to ADA parking areas and adjacent sidewalks/paths, as well as sidewalks on the exterior premises of Costco warehouses;

28

- Narrow requests related to "retail stores" to Costco warehouses which are open to the public, such as the Costco warehouse at issue and other similar Costco warehouses;
- Narrow requests for studies to similar incidents in ADA parking areas and adjacent sidewalks/paths, as well as sidewalks on the exterior premises of Costco warehouses, in the 5 years prior to the construction of the Boise Costco warehouse.

In the exchange of emails, Plaintiffs noted that they believed the Revised Second Set of Discovery was appropriate as written but were willing "to further narrow their requests" in an "attempt to resolve this dispute without the need to again involve the court." Costco agreed, and indicated it would "proceed to respond to [the] narrowed requests." Plaintiffs extended the original deadline for the Revised Second Set of Discovery, but, when Costco failed to submit its response on the extended deadline, Plaintiffs filed a motion to compel discovery and have the requests for admissions deemed admitted. Costco filed responses, and, after a hearing, the Court ruled that the admissions were automatically deemed admitted under the Rules, but stated that it would consider a motion to withdraw the deemed admissions. Costco submitted that motion, and the district court granted it. No further court involvement in the discovery process appears in the record.

Thus, the procedural history demonstrates that Plaintiffs never followed up and secured a ruling based on the district court's earlier comments. Rather, the parties chose, as they are encouraged to do, to settle their disagreement without court involvement. Therefore, plaintiffs failed to preserve this issue for appellate review. "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009) (quoting *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368–69, 179 P.3d 323, 331–32 (2008)). So, while Plaintiffs attack the district court's "decision" and "ruling" narrowing the scope of discovery, the transcript shows the court's remarks were merely comments to help the parties break their discovery deadlock. If anything, the court was providing helpful guidance to assist the parties come to an agreed upon resolution to their discovery dispute. To be clear, something more than "general thoughts" expressed to the parties by a judge are required to meet the adverse-ruling requirement for appellate review.

Accordingly, we find no abuse of discretion in the district court's handling of discovery, and will address the evidentiary record produced by the parties.

**F. The district court erred by striking portions of Plaintiffs' experts' reports.**

Part of the evidentiary record produced by the parties for consideration on summary judgment was the reports of Plaintiffs' experts, Adam Aleksander and Rob Reiter. The district court granted Costco's motion to strike these reports "to the extent Reiter and Aleksander opine that the accident was foreseeable or that the walkway's design was unacceptably risky." It noted that both reports "contain opinions to the effect that the accident Oswald suffered was foreseeable and that the design of the walkway on which it occurred posed an 'unacceptably high' risk to pedestrians," and such opinions were thus inadmissible legal conclusions. Even if these conclusions were factual assessments, the district court reasoned that the opinions were nevertheless inadmissible because they "concern[ed] conclusions or opinions that the average juror is qualified to draw from the facts utilizing the juror's common sense and normal experience."

Plaintiffs argue that the district court erred because Costco never argued that the reports should be struck as legal opinions or because they contained opinions about matters within the experience and knowledge of the average juror. Plaintiffs further argue that while the experts' opinions embraced an ultimate issue to be decided by the jury, neither expert gave an opinion on an ultimate issue of law or instructed the jury as to the applicable law. Likewise, Plaintiffs argue, the opinions were outside the jury's common knowledge because they were "based on various technical and scientific studies, as well as the experts' specialized knowledge and extensive experience." Thus, Plaintiffs argue, the testimony would have assisted the jury to understand the evidence before it and to determine facts at issue—such as whether the Walkway is a dangerous condition, whether the incident was foreseeable, and whether Costco acted reasonably to protect Plaintiffs from vehicular incursions. In response, Costco contends that the district court only excluded specific legal conclusions, but considered the reports without the exclusions and that the experts' statements on foreseeability were properly excluded because duty is a question of law. Lastly, Costco argues that the district court properly excluded the portions of the experts' opinions that attempted to tell the jury what verdict to reach.

Admission of expert testimony is within the discretion of the trial court. *Stoddard v. Nelson*, 99 Idaho 293, 581 P.2d 339 (1978). "This Court applies an abuse of discretion standard when determining whether testimony offered in connection with a motion for summary judgment

is admissible." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 15, 175 P.3d 172, 177 (2007) (citation omitted).

"Summary judgment proceedings are decided on the basis of admissible evidence." *Campbell v. Kvamme*, 155 Idaho 692, 696, 316 P.3d 104, 108 (2013). As a consequence, "[t]he admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012) (citations omitted). Declarations submitted on summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." I.R.C.P. 56(c)(4). A party may object to a declaration filed by an opposing party. I.R.C.P. 56(c)(2).

The standard for experts is no different:

> The admissibility of expert testimony . . . is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment. With respect to the threshold issue of admissibility, the liberal construction and reasonable inferences standard does not apply. Instead, the trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible.

*Mattox v. Life Care Ctrs. of Am., Inc.*, 157 Idaho 468, 473, 337 P.3d 627, 632 (2014) (citations and internal quotation marks omitted).

"To be admissible, the expert's testimony must assist the trier of fact to understand the evidence or to determine a fact at issue in the case." *Noel v. City of Rigby*, 166 Idaho 575, 587, 462 P.3d 103, 115 (2020). Admissible expert testimony should not be rejected merely because it "embraces an ultimate issue." *Id.* (citing I.R.E. 704). However, "[e]xpert testimony that concerns conclusions or opinions that the average juror is qualified to draw from the facts utilizing the juror's common sense and normal experience is inadmissible." *Hansen v. Roberts*, 154 Idaho 469, 474, 299 P.3d 781, 786 (2013) (citing *State v. Ellington*, 151 Idaho 53, 66, 253 P.3d 727, 740 (2011)).

As a corollary, expert testimony consisting of legal conclusions may also be excludable for "invad[ing] the province of the court to determine the applicable law and to instruct the jury." *Ballard v. Kerr*, 160 Idaho 674, 694, 378 P.3d 464, 484 (2016) (citing *Torres v. Cnty. of*

*Oakland*, 758 F.2d 147, 150–51 (6th Cir. 1985)). "The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct, and specialized meaning in the law different from th[at] present in the vernacular. If they do, exclusion is appropriate." *Id.*

Here, Reiter is Plaintiffs' "safety and vehicle incursion expert," and Aleksander is Plaintiffs' "human factors and engineering expert." Both experts relied on numerous studies, publications, and news articles to arrive at their conclusions. Aleksander's report summarized his findings as follows:

> 1. The characteristics of aged individuals and how they may affect the driving function have been described in the literature and are consistent with the behavior of Mr. Myers, at the time of the crash into Mr. Oswald.

> 2. Research has for many years identified the characteristics of handicapped or disabled (ADA) parking permit drivers, and indicate that as a group, they represent a higher risk of a loss of control incident in the ADA parking areas, as was the case with Mr. Myers.

> 3. These age and disability affected driver characteristics present an elevated hazard to pedestrians in an adjoining walkway such as the walkway at the Boise Costco.

> 4. Costco by their specific Walkway design funneled human traffic onto the Walkway offering a seemingly safe passage to pedestrians, shoppers with carts, adults with children, adults carrying infants, individuals from the ADA parking stalls, when in fact the walkway was (and is) an unacceptably high-risk area.

> 5. Costco, by their design and operation of the Boise Costco parking area, provided no protection, and unacceptably high levels of risk to the pedestrians in the Walkway, given that it was adjacent to the designated handicap parking area.

> 6. Alternative parking lot safety features and devices were available to Costco that would have increased protection to pedestrians, and significantly reduced or eliminated the high risk of a foreseeable hazard, namely an injury or fatal collision in the parking lot Walkway, in the form of bollards, barriers, or parking lot design changes.

Plaintiffs summarized Reiter's report in its opposition to Costco's motion for summary judgment as follows:

> Reiter . . . discussed the foreseeability of the exact type of accident that occurred in this case (i.e., pedal and/or driver error in older and/or disabled drivers causing a vehicle to intrude into areas intended to be safe for customers) based upon extensive research, his own experience and a number of other similar accidents at Costco warehouses. . . . Reiter also opined about the numerous aspects of the Walkway that render it unreasonably and foreseeably hazardous, including (1) its layout, which has customers walking between high-risk drivers who are coming

directly at those customers while attempting to park; (2) the narrowness of the Walkway; (3) the Walkway being flush with the parking lot and ADA stalls; (4) the inadequate wheel stops; and (5) the lack of any safety barrier at all, including properly placed bollards, to protect Costco's customers utilizing the Walkway from intruding vehicles.

As a preliminary matter, the district court did not abuse its discretion by ruling on grounds it did even though those grounds were not argued by Costco. "A trial court has the discretion to decide whether an affidavit offered in support of or opposition to a motion for summary judgment is admissible under Rule 56(e), *even if that issue is not raised by one of the parties*." *Esser Elec. v. Lost River Ballistics Techs., Inc.*, 145 Idaho 912, 917, 188 P.3d 854, 859 (2008) (emphasis added) (citing *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994)). When a party submits an expert affidavit in support or defense of a motion for summary judgment, admissibility is a threshold question. *Mattox*, 157 Idaho at 473, 337 P.3d at 632. Thus, the district court's responsibility was to first assess whether the declarations were based on admissible evidence. To be sure, this Court has held that a district court does not abuse its discretion when it considers unobjected-to declarations or affidavits. *See Esser Elec.*, 145 Idaho at 917, 188 P.3d at 859 ("If there is no timely objection, the trial court can grant summary judgment based upon an affidavit that does not comply with Rule 56(e)."). However, this Court has expressly held that the opposite conclusion is not true. *Id.*

That said, the district court erred by determining that Reiter and Aleksander testified to legal conclusions. As outlined above, any questions about the foreseeability of a vehicle-on-pedestrian accident is a factual question to be considered by the jury in assessing whether Costco took the appropriate measure to protect its invitees from harm. *See Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 300–01, 796 P.2d 506, 509–10 (1990) ("Foreseeability is ordinarily a question of fact.").

Having determined that the experts did not invade the province of the court on the basis of legal conclusions, the next question is whether the opinions expressed by the experts improperly invaded the province of the jury by addressing issues within the knowledge and experience of laymen. The district court reasoned that a juror could come to her own conclusions about whether or not the Walkway was risky or whether vehicle incursions were foreseeable. For that reason, the district court struck the statements—not the entire reports—of the experts "to the extent Reiter and Aleksander opine that the accident was foreseeable or that the walkway's design was unacceptably risky." However, the touchstone rationale for this rule is that "to be

admissible the testimony must assist the trier of fact in understanding the evidence or determining an issue in fact." *Jones v. Crawforth*, 147 Idaho 11, 17, 205 P.3d 660, 666 (2009). Incidents of pedal error are counterintuitive, or, at the very least, uncommon in the everyday experience of laymen. Reiter and Aleksander's reports demonstrate not only that pedal incidents are not uncommon, but well known within the industry. Accordingly, their testimony would assist the trier of fact to determine whether Costco's precautions measured up to the risk of harm. Likewise, while using a parking lot may be within the common knowledge of jurors, how to properly and safely design one is not. As such, the district court erred in striking portions of the expert reports.

### G. Plaintiffs put forward sufficient evidence to create a disputed issue of material fact on foreseeability.

With the evidentiary record settled, we now turn to assess whether Plaintiffs put forward sufficient evidence to create a material issue of disputed fact on the issue of foreseeability. We conclude that they have.

Given the proper focus on the type of harm (vehicle-on-pedestrian incidents) rather than the particular facts of this case, we are satisfied that Plaintiffs have produced sufficient evidence to preclude summary judgment. Plaintiffs produced two experts who opined that vehicle-on-pedestrian incidents occurred with some regularity on the premises of big-box retailers. Plaintiffs produced news articles that Costco stores had had prior incidents of vehicle-on-pedestrian incidents in pedestrian pathways at other Costco locations. Costco is charged with institutional knowledge of such prior accidents.

The reports of Plaintiffs' experts also contain evidence that some, but not all, retailers use bollards as protective measures. In light of these risks, Costco provided only three-inch tire stops as protection on the Walkway. While the signposts could offer some sort of barrier, they would seem to offer meager protection against an automobile at best. There were no warning signs indicating that vehicles may enter the Walkway. Unlike the other pedestrian pathways on Costco's property, the Walkway did not have a raised curb. While Costco argues that it could not construct a curb and still provide ADA access, the designs provided by Plaintiffs' experts show various designs where only portions of the pedestrian walkways are flush with the parking lot surface, such as where the access aisle is situated. Therefore, we find that Plaintiffs produced sufficient evidence to create a disputed issue of material fact as to whether Costco failed to

adequately take the foreseeability of the harm into consideration in its duty to prevent injuries to its invitees.

Based on this evidence, we also disagree that no reasonable juror could find in Costco's favor under the circumstances. There may very well be a disagreement among the jurors on whether a wheel stop and signpost were adequate protection based on the infrequent nature of pedal error. Likewise, there may be jurors who find that the lack of a curb or the failure to install bollards fell below the standard of care based on the same level of foreseeability. Others may say that Costco exceeded its duty given the rarity of the harm. But the fact remains that these are all reasonable views of the evidence; thus, it must be left to the jury to determine which view carries the day.

## H. There are disputes of material fact that preclude awarding summary judgment on the issue of causation.

Before the district court's ruling on foreseeability and duty, the parties were focused on the causation element. Costco argued that there was no evidence that the design solutions proposed by the Plaintiffs and Reiter (a wider walkway, a raised walkway, or bollards at the ends of the ADA parking spaces) would have prevented the accident, given the path and speed of Myers' vehicle. In support, Costco relies on the expert report of Torrey Roberts, an accident reconstructionist. Costco also relies on the assumption that Plaintiffs' position is that bollards should have been placed at the front center of each ADA parking stall. Based on Roberts' opinion, Costco asserts that Myers' car would have passed in between the proposed bollards, and the incident would have occurred no differently. Effectively, Costco argues that its expert's reconstruction puts Myers' car as going 12 mph, thus it would have surmounted any wheel stop and curb. Likewise, because Myers tried to park in a no-parking lined area, no bollard or protective measure properly placed in the parking area would have prevented the incident. In short, Costco argued that even if it were negligent in failing to take precautions in regards to the risk of harm presented by vehicle incursions, its negligence was not the cause in fact of Plaintiffs' injury. We cannot agree. This argument requires a certainty about what the jury would find were appropriate protection measures in addition to a precise idea about the path of Myers' vehicle. Neither of these facts can be presumed on summary judgment.

To begin, these questions depend heavily on whether the jury will determine that Costco failed to take adequate precautions (which they very well might), and, if the jury does decide that Costco fell short of that duty, what type of precautions would have been commensurate with its

35

duty given the foreseeability of risk of harm. *See Hayes v. Union Pac. R.R. Co.*, 143 Idaho 204, 208, 141 P.3d 1073, 1077 (2006) (holding that questions as to whether a railroad complied with its common law duty to "provide such warnings and safeguards at its crossings as a reasonably prudent person would demand under the circumstances," was "best left to a jury for determination."). Thus, because it has not been resolved what precautions would have been necessary, if any, we cannot say whether or not it could have prevented the injuries in this case.

Even assuming the jury found that a curb should have been installed and bollards placed at the front center of each ADA stall, it cannot be said with certainty that this would not have affected the outcome. While Myers' car could have missed a bollard placed at the parking spot to the right of the access aisle he mistakenly tried to park in, his car could have nevertheless struck the bollard placed at the spot opposite the spot to the right, thus preventing Oswald from being pinned against the GMC Envoy. In addition, Roberts' reconstruction is precisely that: A reconstruction. The police photographs from the accident's aftermath show Myers' car resting over wheel stops (of which the access aisle has none). Accordingly, there is enough to create a disputed issue of material fact as to whether Myers' car would have struck a bollard placed in the front center of the parking spot to the right of the access aisle. Thus, there are disputed issues of material fact as to whether Costco's negligence (if any) was the cause of Oswald's injuries.

## IV.     CONCLUSION

For the reasons above, we determine that the district court erred in concluding that the Plaintiffs' injuries were unforeseeable as a matter of law. Accordingly, we reverse the district court's grant of summary judgment, vacate the judgment and remand for further proceedings. Costs are awarded to the Plaintiffs.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**